

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2006

# USA v. MacEwan

Precedential or Non-Precedential: Precedential

Docket No. 05-1421

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. MacEwan" (2006). *2006 Decisions*. Paper 1189.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1189

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1421

———

UNITED STATES OF AMERICA

v.

JAMES E. MACEWAN,
                              Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00262)
District Judge: Honorable Michael M. Baylson

———

Argued March 9, 2006

Before:  ROTH and ALDISERT, Circuit Judges, and
              RODRIGUEZ,* District Judge

———

* The Honorable Joseph H. Rodriguez, Senior District Judge, United States District Court for the District of New Jersey, sitting by designation.

(Filed:  April 5, 2006)

Ellen C. Brotman, Esq. (Argued)
John Rogers Carroll, Esq.
Carroll & Brotman
601 Walnut Street
Suite 1150 West
Philadelphia, PA 19106

      Counsel for Appellant

Patrick L. Meehan, Esq.
Robert A. Zaumer, Esq.
Wendy A. Kelly, Esq.
Peter D. Hardy, Esq. (Argued)
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

      Counsel for Appellee

## OPINION

ALDISERT, <u>Circuit Judge</u>.

This appeal primarily requires us to decide if the use of the Internet satisfies the interstate commerce element of the

federal law prohibiting the receipt of child pornography, 18 U.S.C. § 2252A(a)(2)(B).[1] We hold that it does. The question is presented before this Court on defendant James E. MacEwan's appeal from a judgment of conviction and sentence entered on January 31, 2005, in the United States District Court for the Eastern District of Pennsylvania. MacEwan was convicted on two counts of violating § 2252A(a)(2)(B)[2] and, as

---

[1] The act punishes "Any person who . . . knowingly receives or distributes . . . any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . .." 18 U.S.C. § 2252A(a)(2)(B).

[2] We note initially that there appears to be a discrepancy between the crime charged in the indictment, the crime of conviction in the District Court's December 29, 2004 Memorandum Opinion and the crime of conviction listed in the Judgment. Count Two of the indictment, which is the focus of the present appeal, charges a violation of 18 U.S.C. § 2252A(a)(2)(B). The Judgment states that MacEwan was found guilty of violating 18 U.S.C. § 2252(A)(4)(B), which is not an actual offense. The Court's Memorandum Opinion states that MacEwan was charged with and is guilty of violating 18 U.S.C. § 2252A(a)(4)(B). We believe these discrepancies to be mere clerical errors that may be corrected by the District Court at any time pursuant to Rule 36 of the Federal Rules of Criminal Procedure. In any event, in their briefs, both parties correctly argued the merits of MacEwan's conviction under 18 U.S.C. § 2252A(a)(2)(B). The District Court should correct the judgment to state that MacEwan was convicted of violating 18 U.S.C. §

3

a repeat offender of the federal anti-child pornography laws, received a 15-year sentence pursuant to the mandatory minimum sentencing provision of 18 U.S.C. § 2252A(b)(1). In addition to determining whether the jurisdictional nexus of § 2252A(a)(2)(B) comports with the Constitution and was satisfied in this case, we must also decide whether the 15-year sentence imposed by the District Court pursuant to the mandatory minimum sentence requirements of 18 U.S.C. § 2252A(b)(1) constitutes: (1) a violation of the Eighth Amendment prohibition on cruel and unusual punishment, (2) a violation of the separation of powers doctrine, or (3) a deprivation of due process under the Fifth Amendment. Jurisdiction was proper in the District Court pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). For the following reasons, we will affirm the judgment and sentence in all respects.

## I.

James MacEwan is a 71-year-old repeat offender of the federal laws prohibiting the distribution and receipt of child pornography. In 2001, prior to the present conviction for two counts of receiving child pornography in violation of § 2252A(a)(2)(B), MacEwan had been arrested for and later pled guilty to possessing child pornography in violation of § 2252(a)(1)(B). On January 30, 2003, he was sentenced to five years probation. Under the terms of his probation, MacEwan

2252A(a)(2)(B), as that was the offense charged and that was the crime upon which evidence was admitted and considered.

was prohibited from possessing child pornography, and his probation officer was permitted to make random inspections of his computer.

## A.

Within little more than a year, MacEwan was found to have violated the terms of his probation three times, for which an indictment was returned on May 6, 2004. The indictment charged him with three counts of receiving materials containing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B).

MacEwan was first discovered to have violated the conditions of his probation on July 16, 2003, when his probation officer made an unannounced visit to his home to verify his compliance with the terms of his probation. After inspecting MacEwan's computer, the officer found that MacEwan had been visiting child pornography websites. The officer then had the computer seized. Following further inspection, it was found to contain approximately 1,068 graphic image files of child pornography. This incident formed the basis of Count One of the 2004 indictment.

The second violation was discovered on October 9, 2003, when the probation officer made another unannounced visit to MacEwan's home. After inspecting two other computers, the probation officer found links to child pornography websites. The two computers were then seized and later found to contain approximately 256 graphic image files of child pornography. This incident forms the basis for Count Two.

5

The third violation occurred on March 10, 2004, when an undercover United States Postal Inspector, posing as a letter carrier, delivered five videotapes containing child pornography to MacEwan's home. MacEwan had previously ordered these tapes from a catalogue sent by the government as part of an investigation into a global child pornography enterprise. MacEwan was selected to receive the catalogue solicitation because, during the course of the investigation, his name had previously been identified on a customer list for a child pornography website. After the videotapes were delivered and in MacEwan's possession, the Postal Inspectors then retrieved the videotapes pursuant to an anticipatory search warrant. This incident forms the basis for Count Three.

B.

On October 28, 2004, MacEwan entered a guilty plea to Count Three, but proceeded to trial on Counts One and Two. Following a bench trial held that same day, he was acquitted of Count One because the government failed to prove that he had received the image files that were the subject of that count within the applicable statute of limitations period. MacEwan was, however, found guilty of Count Two.

At trial, MacEwan had stipulated to the number of images charged in Counts One and Two, that they met the statutory definition of child pornography, and that the files had been knowingly downloaded from the Internet. He argued, however, that the government could not establish that, in compliance with the interstate commerce jurisdictional element of § 2252A(a)(2)(B), there was an interstate transmission of the

6

pornographic images. He contended that, absent proof to the contrary, the images could just as easily have traveled intrastate and that such an activity was beyond the reach of Congress under the Commerce Clause.

To support its argument that the images had traveled in interstate commerce, the government had James Janco, the manager of Comcast's Network Abuse Department, testify. Comcast was MacEwan's Internet service provider from December 2002 to October 14, 2003. Janco chiefly summarized the flow of data over the Internet and the routing of subscribers' website connection requests.

He stated that when a Comcast subscriber accesses the Internet from his home computer and requests a connection with a website, the connection would first originate from the subscriber's computer, pass through the cable modem – both of which are located in the subscriber's house – and then be sent to a regional data center. For West Chester, Pennsylvania, where MacEwan resided, Comcast's regional data center was located within Pennsylvania. The regional data center takes the subscriber's request, transfers it through various routers within the regional data center, then sends the request to the Internet backbone, which is a series of leased, commercial and private lines. Janco then stated that those lines take the subscriber's specific request and connect it to the server containing the desired website.

Comcast calls this process of accessing a website "Shortest Path First" ("SPF"). Under SPF, when the signal travels from the regional data center it will be dynamically

7

routed along the lines with the least volume of Internet traffic, rather than those covering the shortest geographical distance. In Janco's words: "[I]f the lines that [the request] would normally go within Pennsylvania are clogged or have a high amount of traffic on it, [the Internet backbone] would dynamically assign [the request] to another line connection and send it out of the shortest path first, what typically would be in the State of Pennsylvania in this case." (Trial Transcript, app. at 50-51.) Janco acknowledged, however, that if the Pennsylvania lines are full or too busy, the connection request could instead be routed through lines outside of Pennsylvania, even if the requested website were located on a server located within Pennsylvania. He stated that it was impossible to scientifically ascertain the exact path "any specific request, at a point in time would have done."[3] (Id. at 54.) Ultimately, however, the connection request would end up "wherever the server is physically located where [the subscriber] is trying to go." (Id. at 50-51.) This server could be located in Pennsylvania or anywhere else within the United States.

Before the close of trial, MacEwan made a motion for acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. His motion contended that the government failed to prove the interstate commerce jurisdictional element of § 2252A(a)(2)(B) because there was no evidence presented at trial

---

[3] Janco also stated that Comcast does not monitor data-routing traffic and thus does not possess any records that would indicate the specific route MacEwan's requests would have taken in accessing the child pornography websites. (Trial Transcript, app. at 66-67.)

8

showing that the downloaded image files ever traveled outside of the state of Pennsylvania. He also contended that, as for Count One, the government failed to prove beyond a reasonable doubt that the image files were received within the statute of limitations period for § 2252A(a)(2)(B).

In its Memorandum Opinion dated December 29, 2004, the trial court rejected MacEwan's Rule 29(a) motion on Count Two[4] and held that "the evidence which the government presented, that the images on the Defendant's computers were received through the internet, is sufficient to carry its burden of proof as to interstate commerce, and that it is not necessary to prove that the specific images were received from a source outside of Pennsylvania." (Opinion of the District Court, at 6.) It also rejected MacEwan's challenge that the jurisdictional prong of § 2252A(a)(2)(B) is beyond Congress' power in light of United States v. Lopez, 514 U.S. 549 (1995), United States v. Morrison, 529 U.S. 598 (2000), and Jones v. United States, 529 U.S. 848 (2000). In so ruling, the District Court relied heavily on this Court's holding in United States v. Rodia, 194 F.3d 465 (3d Cir. 1999),[5] which was decided after Lopez, but before

---

[4] The Court granted his Rule 29(a) motion on Count One, holding that the government failed to prove beyond a reasonable doubt that MacEwan received the images that were the subject of that charge within the applicable statute of limitations period.

[5] In Rodia, this Court held that Congress had the power to regulate the intrastate possession of child pornography under its Commerce Clause powers because such possession has a "substantial effect on interstate commerce." Rodia, 194 F.3d at

9

<u>Morrison</u> and <u>Jones</u>.

## C.

MacEwan's sentencing hearing was held on January 31, 2005, where the District Court determined that the enhanced sentencing provisions of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (PROTECT Act), Pub. L. No. 108-21, 117 Stat. 650 (2003), effective as of April 30, 2003, applied to MacEwan because of his 2003 conviction for violating 18 U.S.C. § 2252(a)(1)(B). Pursuant to those enhancement provisions, MacEwan, as a repeat offender of Chapter 110 of Section 18 of the U.S. Code, was required to receive a minimum sentence of 15 years in prison. <u>See</u> 18 U.S.C. § 2252A(b)(1). MacEwan objected to the application of this mandatory minimum, arguing that it violates the Eighth Amendment prohibition on cruel and unusual punishment, the Fifth Amendment Due Process Clause right to an individualized sentence, and the separation of powers doctrine. The Court rejected these arguments and accordingly sentenced MacEwan to 15 years in prison with five years of supervised release. This appeal of both his conviction and sentence followed.

## II.

478-479. There, however, we were interpreting the jurisdictional element of § 2252(a)(4)(B), not § 2252A(a)(2)(B). Accordingly, although the reasoning in <u>Rodia</u> may be persuasive in guiding our analysis of Congress' Commerce Clause powers, it is not controlling.

MacEwan presents a twofold challenge to the jurisdictional element of 18 U.S.C. § 2252A(a)(2)(B). He first contends that it must be strictly interpreted to require the government to prove that the child pornography images were transmitted interstate; otherwise, he contends, the jurisdictional element unconstitutionally expands Congress' power under the Commerce Clause to punish purely intrastate acts. Second, in what is essentially a sufficiency of the evidence challenge, MacEwan contends that the government failed to prove beyond a reasonable doubt that he met the jurisdictional element of § 2252A(a)(2)(B).

A.

We exercise plenary review over MacEwan's challenges to the interpretation and constitutionality of the interstate commerce jurisdictional element of 18 U.S.C. § 2252A(a)(2)(B). See Rodia, 194 F.3d at 469. Section 2252A(a)(2)(B) punishes "[a]ny person who . . . knowingly receives or distributes . . . any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer."

MacEwan faults the District Court for its broad holding that regardless of whether the images originated in Pennsylvania or out-of-state, the government showed that the images were downloaded from the Internet, which was "sufficient to carry its burden of proof as to interstate commerce." (Opinion of the District Court, at 6.) He contends that because the government could not conclusively prove that the child pornography images crossed state lines in their Internet transmission, he is therefore

11

being punished essentially for his mere intrastate possession of child pornography. He then argues that § 2252A does not reach this activity, or, in the alternative, that if it did, Congress does not have the power under the Commerce Clause to punish those who possess child pornography that has not been transmitted interstate.

MacEwan is conflating "interstate commerce" with "interstate transmission" and confusing the nature of the jurisdictional basis for his charged offense.[6] Nowhere in the

---

[6] MacEwan argues that "Congress' inclusion of 'computer' in [the § 2252A(a)(2)(B) jurisdictional provision] demonstrates that the internet was considered to be a possible method of interstate transport, but did not by itself constitute interstate transport." (MacEwan Br. at 17.) He then argues that "Congress['] intention to criminalize the use of a computer to transport prohibited images in interstate commerce prohibits a finding that the statute also criminalized the use of a computer to send images intrastate." (Id. at 17-18.) Had Congress intended for the meaning of the term "interstate commerce" to equate to the transmission of image files over the Internet, he argues that it would have so indicated. We disagree. When interpreting a statute, we are to endeavor to give the terms of the statute their ordinary meaning whenever possible. Okeke v. Gonzales, 407 F.3d 585, 593 (3d Cir. 2005). Moreover, "[i]n construing statutes, 'we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used.'" I.N.S. v. Elias-Zacarias, 502 U.S. 478, 482 (1992) (citation omitted). Congress' specific inclusion of the term "including by computer" denotes its

12

statute does it state that the child pornography images must have crossed state lines; rather, it states solely that they must have been "transported in interstate . . . commerce by any means, including by computer." See Okeke v. Gonzales, 407 F.3d 585, 593 (3d Cir. 2005) (stating that we will give terms of statutes their plain and ordinary meaning). With this distinction in mind, we must therefore analyze whether downloading an image of child pornography from the Internet (1) involves the receipt of something transported in interstate commerce, and (2) whether it is a constitutional exercise of Congress' power under the Commerce Clause to punish those who use the Internet to download such images.

1.

"The Internet is an international network of interconnected computers . . . [and is comparable] to both a vast

---

special concern for the transmission of child pornography by electronic means. It defies sound reason to read this provision to exclude transmissions of child pornography over the Internet. The downloading of images from the Internet is synonymous with the transmission of images in interstate commerce by computer. See infra. To not so read the statute would render the term "including by computer" effectively meaningless. See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (citations and quotations omitted) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."). Accordingly, we reject MacEwan's reading of the statute.

13

library including millions of readily available and indexed publications and a sprawling mall offering goods and services." Reno v. ACLU, 521 U.S. 844, 850-853 (1997). Moreover, as is evident from the trial testimony of the government's expert, unless monitored by specific equipment, it is almost impossible to know the exact route taken by an Internet user's website connection request, such as MacEwan's requests to connect with various child pornography websites. Because of fluctuations in the volume of Internet traffic and determinations by the systems as to what line constitutes the "Shortest Path First," a website connection request can travel entirely intrastate or partially interstate.

Regardless of the route taken, however, we conclude that because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce. Here, once the images of child pornography left the website server and entered the complex global data transmission system that is the Internet, the images were being transmitted in interstate commerce. To quote the Court of Appeals for the First Circuit in United State v. Carroll, the "transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce." 105 F.3d 740, 742; see United States v. Runyan, 290 F.3d 223, 239 (5th Cir. 2002) (same).

2.

That said, it is clear that Congress has the power to

14

regulate the downloading of child pornography from the Internet. The Commerce Clause gives Congress power to regulate three types of activity: (1) "the use of channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce." See Lopez, 514 U.S. at 558-559. Ignoring the first and second categories cited by Lopez, MacEwan proceeds to the third, and argues that because the government could not prove that the child pornography images traveled across state lines, the jurisdiction over his activity was only then created by his mere possession of child pornography. He then contends that, pursuant to Lopez and Morrison, Congress lacks the authority to regulate this activity because the mere *intrastate* possession of child pornography does not have a substantial impact on *interstate* commerce.

We disagree with this approach. In addressing the transmission of child pornography images over the Internet, we need not proceed to an analysis of Lopez's third category when Congress clearly has the power to regulate such an activity under the first two. See United States v. Bishop, 66 F.3d 569, 588 n.29 (3d Cir. 1995) ("Lopez involved only a regulation that was justified, if at all, under Category Three [(the substantial effects test)] . . . [a]s such, Lopez does not affect our analysis here [of Category Two]."); compare with Lopez, 514 U.S. at 559 (proceeding to an analysis of congressional power under Category Three, where it was not argued that the first two categories applied); Morrison, 529 U.S. at 609 (same). Indeed,

15

it is difficult to find an act more intertwined with the use of the channels and instrumentalities of interstate commerce than that of downloading an image from the Internet. See United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce, and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact."). Accordingly, we are able to state conclusively that Congress' power under § 2252A(a)(2)(B) lies in its ability to regulate the channels and instrumentalities of interstate commerce.[7]

3.

---

[7] By basing Congress' power to regulate the transmission of child pornography via the Internet under § 2252A(a)(2)(B) upon its power to regulate the channels and instrumentalities of interstate commerce, we avoid the necessity of revisiting our holding in Rodia by analyzing whether MacEwan's mere possession of child pornography that may have traveled wholly intrastate had a substantial impact upon interstate commerce as required by Lopez's Category Three. See Rodia, 194 F.3d at 473 (conducting such an analysis, as required by Lopez, as to whether the mere intrastate possession of such materials was something Congress could prohibit). Accordingly, insofar as the District Court premised its conclusions upon Rodia, we affirm on other grounds. Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1145 n.1 (3d Cir. 1983) ("An appellate court may affirm a result reached by the district court on different reasons, as long as the record supports the judgment.").

16

Having concluded that the Internet is an instrumentality and channel of interstate commerce,[8] it therefore does not matter whether MacEwan downloaded the images from a server located within Pennsylvania or whether those images were transmitted across state lines. It is sufficient that MacEwan downloaded those images from the Internet, a system that is inexorably intertwined with interstate commerce. See Lopez, 514 U.S. at 558 (stating that Congress has the power to regulate an instrumentality of interstate commerce even though the "threat may come only from intrastate activities"); Bishop, 66 F.3d at 588 (holding that Congress has the power to regulate the instrumentalities of interstate commerce even though the wrongful conduct may occur wholly intrastate).

B.

---

[8] Because the Internet is a worldwide communications system composed of an interconnected network of computers, data lines, routers, servers, and electronic signals, it is difficult to discern when the instrumentality component of Lopez's Category Two ends and the channel component of Lopez's Category One begins. We find no need to make a distinction between the two categories, however, because the Internet is both a channel of interstate commerce, see Extreme Associates, 431 F.3d 150, 161 (3d Cir. 2005) ("The Internet is a channel of commerce covered by the federal statutes regulating the distribution of obscenity."), and, much like a bridge, railroad, highway, or airplane, it constitutes an instrumentality of interstate commerce, see Bishop, 66 F.3d at 588 (listing types of interstate instrumentalities).

17

At trial, MacEwan stipulated that he downloaded from the Internet the child pornography images that were the subject of his conviction for Count Two of the indictment. Accordingly, in light of our conclusion that the government is not required to prove that the child pornography images crossed state lines before being downloaded and received by the defendant, but rather only must prove that the images were downloaded from the Internet, which is properly regulated by Congress as a channel and instrumentality of interstate commerce, it is beyond doubt that the government proved that MacEwan satisfied the jurisdictional element of § 2252A(a)(2)(B). Cf. United States v. Kimler, 335 F.3d 1132, 1138 n.7 (10th Cir. 2003) (stating that even if the ultimate source of the child pornography images was an intrastate distributor, the defendant's activity "would still be interstate if, as the evidence at trial established, he sent and received the images in interstate commerce over the internet"); United States v. Hilton, 257 F.3d 50, 54 (1st Cir. 2001) ("[P]roof of transmission of pornography over the Internet or over telephone lines satisfies the interstate commerce element of the offense.").

## III.

We next turn to MacEwan's challenges to his 15-year sentence. As part of an effort by Congress "to restore the government's ability to prosecute child pornography offenses successfully," the PROTECT Act amended § 2252A to provide increased punishment for repeat child pornography offenders. S. Rep. No. 108-2, at 1 (2003). The Act increased the mandatory minimum sentences for repeat offenders from five to 15 years. PROTECT Act, Pub.L. No. 108-12, §

18

103(b)(1)(E)(ii),117 Stat. 650, 653 (2003) (codified as amended at 18 U.S.C. § 2252A(b)(1)).  Effective as of April 30, 2003, the amended mandatory minimum sentencing provision now states that:

> Whoever violates, or attempts or conspires to violate, paragraph (1), (2), (3), (4), or (6) of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years, but, if such person has a prior conviction under this chapter, chapter 71, chapter 109A, chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years.

18 U.S.C. § 2252A(b)(1) (2004).  Prior to the instant case, MacEwan had entered a guilty plea and was sentenced to probation for possessing child pornography in violation of 18 U.S.C. § 2252(a)(1)(B).  His present conviction on two counts of knowingly receiving child pornography images in violation of 18 U.S.C. § 2252A(a)(2)(B) triggered the enhanced

19

sentencing measures of the PROTECT Act.[9]

MacEwan contends that the 15-year mandatory minimum sentence required by § 2252A(b)(1) is unconstitutional because it violates the Eighth Amendment prohibition on cruel and unusual punishment, the separation of powers doctrine and the Fifth Amendment Due Process Clause right to an individualized sentence. We exercise plenary review over these constitutional challenges to the 15-year mandatory minimum sentence of § 2252A(b)(1). See Rodia, 194 F.3d at 469 (exercising plenary review over constitutional questions). We will deal with each contention in turn.

A.

MacEwan argues that the 15-year mandatory minimum sentence of § 2252A(b)(1) offends the Eighth Amendment as "cruel and unusual punishment," because it is grossly disproportionate to the offenses that MacEwan committed and is at odds with the "evolving standards of decency" that are a

---

[9] We also note that even if we had not determined that Congress had the power under the Commerce Clause to regulate MacEwan's downloading of child pornography, he still pled guilty to Count Three of the indictment which also charged a violation of § 2252A(a)(2)(B) for his receipt, by mail, of five videotapes containing child pornography. Accordingly, regardless of our treatment of his conviction for Count Two, MacEwan would still be subject as a repeat offender to the mandatory minimum 15-year sentencing requirement of § 2252A(b)(1).

part of American society. See Atkins v. Virginia, 536 U.S. 304, 311-312 (2002). In arguing that the mandatory minimum provision of § 2252A(b)(1) offends the Eighth Amendment, MacEwan cites no cases where any court has found that such a mandatory minimum non-lifetime sentence offends the Eighth Amendment. We will therefore begin our Eighth Amendment proportionality analysis by examining the framework presented by the Supreme Court in Ewing v. California, 538 U.S. 21 (2003), and Solem v. Helm, 463 U.S. 277 (1983), and our own court in United States v. Rosenberg, 806 F.2d 1169 (3d Cir. 1986).

In Ewing, the plurality opinion[10] states that the "Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" 538 U.S. at 20 (quoting Harmelin v. Michigan, 501 U.S. 957, 996-997 (1991) (Kennedy, J., concurring in part and concurring in judgment)). When evaluating proportionality challenges to sentences under the Eighth Amendment, courts must examine three factors: (1) "the gravity of the offense and the harshness of the penalty"; (2) "the sentences imposed on other criminals in the same jurisdiction"; and (3) "the sentences imposed for commission of the same crime in other jurisdictions." Solem, 463 U.S. at 290-292. When conducting this analysis, this Court has recognized that

---

[10] Justice O'Connor wrote the plurality opinion, which Chief Justice Rehnquist and Justice Kennedy joined. Justices Scalia and Thomas filed opinions concurring in the judgment, but stating that the Eighth Amendment contains no proportionality principle. See Ewing, 538 U.S. at 31-33.

21

we "'should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.'" Rosenberg, 806 F.2d at 1175 (quoting Solem, 463 U.S. at 290).

This principle of substantial deference therefore "restrains us from an extended analysis of proportionality save in rare cases." Id. (quoting Solem, 463 U.S. at 290 n.16). Consequently, in assessing such a challenge, the first proportionality factor acts as a gateway or threshold. If the defendant fails to show a gross imbalance between the crime and the sentence, our analysis is at an end. We, therefore, must focus upon whether MacEwan's is "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Ewing, 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J.)). If no such inference of gross disproportionality exists, then we are not bound to conduct any "comparative analysis 'within and between jurisdictions'" as required by Solem's second and third factors. Id. at 23 (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J.)).

1.

Turning to the first proportionality factor, we note that the Eighth Amendment does not demand strict proportionality between the crime and the sentence; rather, it forbids only those sentences that are "grossly disproportionate" to the crime. Id. at 23. Indeed, "successful challenges to the proportionality of particular sentences should be exceedingly rare." Id. at 22 (quoting Hutto v. Davis, 454 U.S. 370, 374 (1982) (per

22

curiam)). Here, the harshness of the 15-year mandatory minimum sentence is not premised purely upon the commission of the crimes charged in the 2004 indictment, but also upon the fact that MacEwan is a recidivist who has *previously* committed the crime of receiving child pornography. Indeed, the punishment of recidivism, as occurs in § 2252A(b)(1), "has long been recognized as a legitimate basis for increased punishment." Id. at 25.

An appellant confronts a very high bar when challenging a sentence mandated by Congress as the minimum punishment for a recidivist offender. In Ewing, the Supreme Court upheld the California three-strikes law in the face of a challenge by a defendant who had received a mandatory sentence of 25 years to life for his conviction of felony grand theft of three golf clubs. Id. at 28, 30-31. The defendant had previously been convicted of four serious or violent felonies. Id. at 19. In Rummel v. Estelle, the Court upheld a life sentence for a defendant who was convicted under a three-strikes law where the triggering offense was the obtaining of $120.75 by false pretenses and the appellant had committed two previous fraud felonies where the amount obtained was $80 and $28.36, respectively. 445 U.S. 263, 265-266 (1980). It was only in Solem that the Court ruled that a life sentence punishment for a recidivist offender violated the proportionality principles of the Eighth Amendment. 463 U.S. at 296-297. There, the defendant – who had been convicted of uttering a "no account" check for $100, which is a felony, and had six prior minor and nonviolent felonies on his record – was appealing a life sentence without the possibility of parole. Id. In distinguishing its differing treatments of the defendants in Solem and Rummel, the Court noted that the

23

defendant in Rummel faced the possibility of parole for his sentence, whereas the defendant in Solem could only petition for executive clemency, which is a vastly different and much more unpredictable system. Id. at 300-301.

2.

Here, MacEwan is facing a 15-year mandatory minimum prison term that he received for violating federal anti-child pornography laws not once, but twice. His crimes were at least as serious as those committed by the appellants challenging their life sentences in Rummel and Ewing, which the Supreme Court upheld as constitutional. And, unlike the appellant in Solem, MacEwan's triggering crime is not "one of the most passive felonies a person could commit," such as the utterance of a "no account" check for $100. See Solem, 463 U.S. at 296. Moreover, the sentence received by MacEwan, unlike those received by the defendants in Rummel and Solem, is not a life sentence, but 15 years.[11] Indeed, in United States v. Gross, the

[11] MacEwan attempts to inflate the magnitude and nature of his sentence, and cast it as a life term, by arguing that he is 70 years old and in bad health, and therefore cannot possibly hope to survive the 15-year term. (See MacEwan Br. at 34, 40.) In support of this argument he cites to United States v. Martin, wherein the Seventh Circuit ruled that it was an abuse of discretion for a district court to sentence a 45-year-old convicted of arson to 50 years in prison, which it found to be a *de facto* life sentence, where the statute did not authorize a life sentence as a penalty. 63 F.3d 1422, 1433-1434 (7th Cir. 1995). Unlike the Seventh Circuit in Martin, however, we are dealing with a 15-

24

Court of Appeals for the Seventh Circuit ruled that the 15-year mandatory minimum sentence provision of § 2252A(b)(1) does not violate the proportionality principles of the Eighth Amendment where the defendant had been convicted of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B) and he had been convicted previously of sexual assault of a minor and lewdness with a minor.  437 F.3d 691 (7th Cir. 2006).

MacEwan has repeatedly violated the federal anti-child pornography laws, and attempts to downplay the nature of those

_____

year mandatory minimum sentence imposed by statute, not a statute allowing the imposition of any term of years except a lifetime sentence.  MacEwan cites no cases indicating that a *de facto* life sentence created by a statutory mandatory minimum term of years is a violation of the Eighth Amendment.

We also cannot agree with MacEwan's attempts to cast his sentence as a punishment for an addiction in violation of Robinson v. California, 370 U.S. 660, 666-667 (1962) (finding unconstitutional a 90-day sentence imposed for being addicted to narcotics). (See MacEwan Br. at 30-32, 40.)  MacEwan might have a problem controlling his urges to view child pornography, but that is not what the statute is punishing.  Unlike in Robinson, where the statute punished the status of being an addict, the statute here punishes one for repeatedly violating the federal laws prohibiting the receipt of child pornography.  Cf. United States v. Pena, 125 F.3d 285, 287-288 (5th Cir. 1997) (concluding that the statute at issue is not unreasonable where it punishes the violation of probation for using narcotics, not the defendant's addiction to narcotics).

25

offenses by claiming that he is not a violent offender, or a trafficker in drugs or guns. We do not agree with this use of relativistic arguments to diminish the seriousness of his offenses. In evaluating the magnitude of the harm caused by child pornography, we defer to the findings made by Congress. The congressional findings underlying § 2251 repeatedly stress that child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved." Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996) (codified as amended at 18 U.S.C. § 2251).[12] Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing

---

[12] We discuss these congressional findings even though they were not made in relation to the recent 2003 PROTECT Act amendments to § 2252A(b)(1). The issues discussed in the congressional findings for the amendments to § 2251 discuss the harm caused by child pornography, which the PROTECT Act amendments were designed to directly combat. See S. Rep. No. 108-2, at 1 (2003) (stating that the PROTECT Act was designed to "restore the government's ability to prosecute child pornography offenses successfully"). This Court has held that we are able to examine congressional findings underlying other acts where the findings discuss a matter closely related to the issues underlying the presently analyzed law. See Rodia, 194 F.3d at 474 n.4 (analyzing the congressional findings for the 1978 Protection of Children Against Sexual Exploitation Act to better understand the amendments made by Congress in 1990 to § 2252).

harm by haunting those children in future years." Id. Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." § 121, 110 Stat. at 3009-27. Furthermore, "it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials." Id.; see also New York v. Ferber, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.").

3.

In light of the heavy burden that an appellant must carry in order to show that his sentence is grossly disproportionate, it is clear that MacEwan's is not one of those rare cases where the gravity of his crime of conviction is so outweighed by the harshness of his sentence that we are led to reach "an inference of gross disproportionality." We therefore do not need to extend our Eighth Amendment proportionality analysis to an examination of the crimes committed and sentences received by other defendants in the federal and state jurisdictions.[13] See

---

[13] In so ruling, we decline to examine the statistics that MacEwan has presented demonstrating the sentences prescribed by various state jurisdictions as punishment for the possession

Rosenberg, 806 F.2d at 1176 ("Because we do not believe that this case warrants an extended eighth amendment analysis, we need not attempt to match defendants' sentences with the statistics."). Although we agree that the 15-year sentence is harsh, it was duly enacted by Congress as a punishment for those who had repeatedly taken illicit advantage of one of the most vulnerable segments of our society, its children. Accordingly, we conclude that the 15-year mandatory minimum sentence required by § 2252A(b)(1) for repeat child pornography offenders is not a cruel and unusual punishment in violation of the Eighth Amendment.

B.

MacEwan next argues that the mandatory minimum provision of § 2252A(b)(1) violates the separation of powers doctrine. He contends that by enacting a statutory mandatory minimum, Congress has "stripped the judiciary of its historic role in the sentencing process and has transferred that judicial power to the executive branch and deprived defendants and the public of the right to, and social benefits of, individualized sentences." (MacEwan Br. at 42.) He argues that this system, in effect, "'unite[s] the power to prosecute and the power to

of child pornography. (See MacEwan Br. at 37 n.3.) Furthermore, notwithstanding MacEwan's entreaties to the contrary, we also conclude that it is unnecessary for us to conduct a comparative analysis between the sentence received by an individual convicted of receiving child pornography a second time and the sentences received for those convicted of second-degree murder, kidnapping or rape. (See id. at 35-36.)

sentence within one Branch'" because it vests power in the prosecutors to decide when to charge an offense triggering the mandatory minimum sentencing provision. (Id. at 44 (quoting Mistretta v. United States, 488 U.S. 361, 391 n.17 (1989)).)

In considering MacEwan's argument, we must first address the nature of the separation of powers doctrine. In Lujan v. Defenders of Wildlife, the Supreme Court observed that "the Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." 504 U.S. 555, 559-560 (1992). Illustrating that common understanding, in Eash v. Riggins Trucking Inc., this Court stated that the "first sentence of the Constitution expressly vests the legislative power in Congress, Art. I, § 1" and that "Congress through its Article I, Section 8 power to enact those laws that are 'necessary and proper' has the exclusive power to define offenses and to establish penalties." 757 F.2d 557, 573 (3d Cir. 1985).[14] Conversely, in discussing prosecutors' powers, we have stated that "the decision whether or not to prosecute and what charges to file generally rests within the prosecutor's broad discretion." United States v. Esposito, 968 F.2d 300, 306

---

[14] In Eash, we were merely restating a maxim put forth almost two hundred years ago by the Supreme Court in United States v. Hudson and Goodwin, 11 U.S. (7 Cranch) 32 (1812). Therein, the Court addressed the power of the judicial branch by examining the power granted by the legislative branch, stating: "The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the Court that shall have jurisdiction of the offence." Id. at 34.

29

(3d Cir. 1992).

Turning now to the present dispute over mandatory minimum sentences, we note that the Supreme Court has specifically held that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." Chapman v. United States, 500 U.S. 453, 467 (1991). Moreover, it has observed that "determinate sentences were found in this country's penal codes from its inception . . . and some have remained to the present." Id. (citations omitted). Similarly, this Court has also acknowledged our traditionally limited discretion in sentencing:

>While the pronouncement of sentence after a trial or a guilty plea may be an inherently judicial function, the proposition that specifying the sentence is an inherently judicial function is not supportable either by history or by the text of the Constitution. The Supreme Court has consistently recognized that Congress has plenary authority over the designation of appropriate punishment for federal crimes. See United States v. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); Ex parte United States, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). The early practice was for Congress to prescribe specific punishments for specific crimes, and it was only much later that Congress delegated to the federal courts the broad discretion in sentencing which they have exercised in recent years. Grayson, 438 U.S. at 45-46, 98 S.Ct. at 2613. The Supreme

30

Court rejected the proposition that the power over sentencing is inherently judicial when it decided that Congress' delegation of the authority to determine release dates to the Parole Commission validly implied that the judge has no enforceable expectations with respect to the release date, short of the statutory term. United States v. Addonizio, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Likewise, this court in Geraghty v. United States Parole Commission, 719 F.2d 1199, 1208 (3d Cir. 1983), cert. denied, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984), squarely held that the legislation creating the federal parole board was not an impermissible delegation of an inherently judicial function. Thus, we hold that Congress may lawfully curtail judicial discretion in sentencing.

United States v. Frank, 864 F.2d 992, 1010 (3d Cir. 1988) (addressing a similar contention that the Sentencing Reform Act of 1984 unconstitutionally stripped the federal courts of their traditional role in sentencing).

As for MacEwan's argument that the mandatory minimum provision of § 2252A(b)(1) vests too much power in prosecutors to decide the sentence of defendants via the charging of specific triggering offenses, we have held that it is "well settled that a legislature can exercise its right to limit judicial discretion in sentencing by bestowing on prosecutors the right to make decisions that may curtail judicial discretion." Ehrsam v. Rubenstein, 917 F.2d 764, 767 (3d Cir. 1990)

(rejecting appellant's argument that the Sentencing Guidelines vest an unconstitutional amount of discretion in prosecutors).

It is the Congress that has the power to define a crime and set its punishment. Notwithstanding that we judges may have imposed a lesser sentence in the case before us, and question the application of draconian mandatory minimum sentences in some cases, our jurisprudential hands are tied. The great Cardozo taught us long ago: "The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure." Benjamin N. Cardozo, The Nature of the Judicial Process 141 (1921). Although we recognize that a host of inequities inhere in many large mandatory sentences, the relief must come from the legislative arm of government and not from the judges of the Third Article. Mandatory minimum sentencing provisions do restrict, or in some cases strip, the courts of the power to impose an individually-crafted sentence for a specific defendant; nevertheless, we cannot agree that the use of mandatory minimums violates the doctrine of separation of powers. Accordingly, we may not disturb Congress' power to define a sentence for a crime unless the sentence mandated for a crime offends the Constitution, i.e., is a cruel and unusual sentence or offends the Due Process Clause of the Fifth Amendment. See Chapman, 500 U.S. at 465 (citations omitted) ("[A] court may impose, whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.").

C.

32

Finally, MacEwan argues that the mandatory minimum sentencing provision of § 2252A(b)(1) is unconstitutional because "the Due Process Clause dictates that [he] should have been the recipient of individualized sentencing in connection with the sentence to be imposed." (MacEwan Br. at 45.)  We need not dwell upon this argument, however, because this Court has repeatedly held that there is no due process right to individualized sentences.  See Ehrsam, 917 F.2d at 766 ("We reaffirm our previously expressed view that the Due Process Clause permits mandatory sentences."); Frank, 864 F.2d at 1010.  Rather, "[a] sentencing scheme providing for 'individualized sentences rests not on constitutional commands, but on public policy enacted into statutes.'" Chapman, 500 U.S. at 467.  Accordingly, we determine that the 15-year minimum sentence mandated by § 2252A(b)(1) does not offend the Due Process Clause of the Fifth Amendment.

* * *

We therefore hold that the Internet is both a channel and instrumentality of interstate commerce and that Congress can regulate the downloading of child pornography over the Internet under 18 U.S.C. § 2252A(a)(2)(B) even if the transmission never crossed state lines.  Moreover, because MacEwan admitted that he downloaded the images from the Internet, sufficient evidence existed for a trier of fact to find the interstate commerce jurisdictional element of § 2252A(a)(2)(b) met beyond a reasonable doubt.  Finally, we conclude that the 15-year mandatory minimum sentence of § 2252A(b)(1) offends neither the Eighth Amendment prohibition on cruel and unusual punishment, the separation of powers doctrine, nor the Due

Process Clause of the Fifth Amendment. We will affirm the conviction and sentence of the District Court.

_____