**UNITED STATES of America**

v.

**John E. SCHENBERGER, Jr.**

**Mag. No. 07–2077(JS).**

United States District Court,
D. New Jersey,
Camden Vicinage.

July 27, 2007.

---

**22.** *Joy Technologies, Inc. v. Flakt, Inc.,* 772 F.Supp. 842, 848 (D.Del.1991).

**23.** *See Ciena Corp.,* 210 F.R.D. at 521.

Howard Joshua Wiener, Office of the U.S. Attorney, Camden, NJ, for United States of America.

## OPINION AND ORDER

JOEL SCHNEIDER, United States Magistrate Judge.

This matter is before the Court on the request of defendant John E. Schenberger, Jr. for a detention hearing pursuant to 18 U.S.C. § 3142(f). This case arises out of a two-count indictment issued in the Western District of Tennessee charging defendant with violating 18 U.S.C. § 2252(a)(1). Defendant was arrested in New Jersey on July 10, 2007, and appeared before this Court for his initial appearance on July 11, 2007. On the same date an Order of Temporary Detention [Doc. No. 3] was entered. Defendant's detention hearing was held on July 13, 2007. For the reasons to be discussed the Court denies defendant's request for bail and finds that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. This Opinion will set forth the Court's written findings of fact and a written statement of the reasons for the detention as required by 18 U.S.C. § 3142(i).[1]

*Background*[2]

Defendant is employed as a police officer in the Pennsauken Township Police

Timothy J.P. Quinlan, Quinlan, Dunne & Daily, Merchantville, NJ, for John E. Schenberger, Jr.

1. At the conclusion of the July 13, 2007 detention hearing this Court read into the record the sum and substance of this Opinion. This written Opinion formalizes the Court's ruling. An Order of Detention Pending Trial was entered on July 13, 2007. [Doc. No. 6].

2. As was its right the government proceeded by proffer at the detention hearing. *See* 18 U.S.C. § 3142(f); *United States v. Delker*, 757

F.2d 1390, 1395 (3d Cir.1985). The evidence proffered by the government included the indictment and Complaint naming defendant, the Affidavit submitted in support of the Complaint, the Return of Service of the Search Warrant at defendant's home, and the report of Pretrial Services. All of these documents were produced to defense counsel. The Court also considered the confidential report of the officers who arrested defendant. Although

Department where he has worked for the past 16 years. The Court has been informed that before he was arrested defendant was "responsible for the [Police Department's] ... Internet Web Site and computers."

Defendant is charged with receiving and distributing child pornography. While the Federal Bureau of Investigation, Memphis Division, Crimes Against Children Task Force ("MCACTC") was investigating a Tennessee resident, the MCACTC learned that the defendant was on their target's "buddy list" using a "Google Hello" instant chat feature. The MCACTC also learned that the target and defendant exchanged child pornography over the internet. Thereafter, a Task Force Officer ("TFO") logged on the internet under an assumed identity and communicated with the defendant in New Jersey. During two contacts (June 5 and July 5, 2007) the defendant transferred 1071 digital picture files and eleven digital movie files to the TFO. The files were sexually explicit in nature and included images of bestiality, adult and child bondage, and child pornography. There were 799 pictures and nine movies that portrayed young children participating in sexually explicit poses and/or acts; thirteen of the pictures were "bondage/dominance pictures involving children." This Court has not personally viewed the referenced evidence but it has been informed that the pictures included "images of prepubescent children engaged in specific sexual activity to include making lascivious display of genitalia and oral intercourse, . . . ." One of the pictures showed the defendant and four other pictures showed the defendant's genitalia. One week before defendant's arrest the TFO advised defendant that the TFO's five-year old niece was coming to visit in

Tennessee. Defendant "talked" with the agent about the agent participating in sexual activities with the minor and allowing him to watch via a webcam. Defendant offered to borrow a webcam from his friend so that the agent and minor could watch his activities simultaneously. Immediately before he was arrested while on duty, defendant communicated with the agent via the internet and was expecting to watch via a webcam the live molestation of a five-year old girl in Tennessee. The defendant wrote the agent, "I'm in the office [Pennsauken Township Police Department],˙once your niece gets there I'll lock my door so I can watch."

*Discussion*

Generally, a defendant must be released on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(c)(B). Pursuant to 18 U.S.C. § 3142(e), however, if after a detention hearing a court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community," the court must order the detention of the person before trial. If the government moves for detention on the basis of danger to the community, it must prove this by clear and convincing evidence. If the government or court believes detention is appropriate because there is a risk of flight, this must be proved by a preponderance of the evidence. *See generally, United States v. Abdullahu,* 488 F.Supp.2d 433, 437–38, *recon. den.,* 2007 WL 1816010 (D.N.J.2007).

In this case the government moved for detention on the ground of danger to the community and risk of flight. The

this report was sealed pursuant to Fed. R.Civ.P. 16(d) [Doc. No. 4], defense counsel

reviewed the report before the detention hearing.

government may move for detention on the basis of danger to the community only for an offense that is listed in 18 U.S.C. § 3142(f)(1)(A) to (E). In this instance the government may move for pretrial detention on dangerousness grounds pursuant to subsection (f)(1)(A) which references a "crime of violence", and (f)(1)(E) which includes "any felony that is not otherwise a crime of violence that involves a minor victim. . . ." For purposes of the Bail Reform Act, any felony under 18 U.S.C. § 2251, *et seq.* is classified as a crime of violence and allows the government to move for detention on dangerousness grounds. 18 U.S.C. § 3156(a)(4)(C). Further, since the charge against defendant plainly involves a "minor victim," section 3142(f)(1)(E) comes into play. If probable cause exists to believe that defendant committed an offense listed under section 2252(a)(1), then a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the safety of any other person and the appearance of the person as required. 18 U.S.C. § 3142(e).[3] Once the rebuttable presumption is established, the burden is then placed on the defendant to produce countervailing evidence that forms a basis for his contention that he will appear and will not pose a threat to the community. *U.S. v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). If the defendant meets this burden of production, the burden shifts back to the government to prove a risk of flight by a preponderance of the evidence or dangerousness by clear and convincing evidence. *United States v. Perry*, 788 F.2d 100, 114–15 (3d Cir.1986). The burden of persuasion always rests with the government. *Id.*

Defendant does not dispute that this is a "rebuttable presumption" case. In order to rebut the presumption defendant argues, as he must, that if he is released he would agree to all of the conditions set forth in 18 U.S.C. § 3142(c)(1)(B).[4] He will also agree to reside with his father in Delaware, apart from his wife and children. In addition, defendant will agree to remove all computers from his residence. Other than the equity in his home, defendant does not have any significant financial assets to post as security for his release. Defendant's wife did not agree to post the defendant's home as security for defendant's appearance. No third-party has stepped forward and offered to post any financial security for defendant. Lastly, defendant proposes that his wife and father act as his third-party custodians.

For the reasons discussed in this Opinion, this Court does not believe defendant has rebutted the presumption of detention. In addition, even if this Court ruled that defendant rebutted the presumption, the government has proved by a preponderance of the evidence that no condition or combination of conditions exist that will reasonably assure defendant's appearance

---

3. Probable cause exists in this case because an indictment was issued against defendant for an alleged violation of section 2252(a)(1). *U.S. v. Suppa*, 799 F.2d 115, 119 (3d Cir.1986)(indictment for crime enumerated in Bail Reform Act is sufficient to support a finding of probable cause triggering rebuttable presumption).

4. According to 18 U.S.C. § 3142(c)(1)(B), an order of release in a case that involves a minor victim under section 2252(a)(1) must require the defendant, at a minimum, to sub-

mit to the following conditions: (1) electronic monitoring; (2) specified restrictions on personal associations, place of abode or travel; (3) avoid all contact with an alleged victim of the crime and with a potential witness who may testify; (4) report on a regular basis to a designated law enforcement agency, pretrial service or other agency; (5) comply with a specified curfew; and (6) refrain from possessing a firearm, destructive devise or other dangerous weapon.

at trial. It is just as clear that the government has proved by clear and convincing evidence that no condition or combination of conditions exist that will reasonably assure the safety of the community if defendant is released.

 The factors a court must consider in determining whether bail or detention is appropriate are set forth in 18 U.S.C. § 3142(g). They include the nature and circumstances of the offense charged, including whether the offense is a crime of violence, the weight of the evidence against the defendant, the history and characteristics of the defendant and the nature and seriousness of the danger to any person or the community that would be posed if the defendant is released. A danger to the community does not only include physical harm or violent behavior. The concept of "safety" may include non-physical harm. *United States v. Giampa*, 904 F.Supp. 235, 358 (D.N.J.1995); *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir.1979) (holding that "[a] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within contemplation of [the Bail Reform Act] )"; *see also* S.Rep. No. 225, 98th Cong., 2d. Sess. 12, reprinted in 1984 U.S.Code Cong. & Ad. News 3182, 3195 ("The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence"). In assessing a defendant's danger to the community courts typically look at the nature and circumstances of the crime, the pre-sentence report, the defendant's prior criminal record, pending charges and any other factors indicative of the defendant's propensity to commit crime generally or otherwise to endanger the community. *Provenzano*, 605 F.2d at 96. Factors courts typically look at to assess a defendant's risk of flight include the nature and circumstances of the offense, the defendant's family ties, employment status and financial resources, the defendant's character and mental condition, the length of defendant's residence in the community, any prior criminal record and any flight or failures to appear in court proceedings. *United States v. Bissell*, 954 F.Supp. 903, 907 (D.N.J.1997); *Giampa*, 904 F.Supp. at 358. Other factors to examine are the use of aliases, unstable residential ties, efforts to avoid arrest and hidden assets. *United States v. Giordano*, 370 F.Supp.2d 1256, 1264 (S.D.Fl.2005). In order to decide whether to detain a defendant a fact intensive analysis must be done. The Third Circuit has noted, "[e]ach case ... is *sui generis*, and must be decided on the basis of the particular record deduced." *United States v. Traitz*, 807 F.2d 322, 325 (3d Cir.1986). Pursuant to 18 U.S.C. § 3142(g), the Court will undertake to examine four (4) statutory factors to determine if bail or detention is appropriate.

### (1) Nature and Circumstances of the Offense Charged

The first factor this Court must examine to determine if bail should be granted or if detention is appropriate is the "nature and circumstances" of the offense charged. No one questions that child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society, children. *United States v. MacEwan*, 445 F.3d 237, 250 (3d Cir.2006). The Third Circuit acknowledges the dangers of child pornography and has quoted congressional findings under 18 U.S.C. § 2251 which "repeatedly stress ... that child pornography 'is a form of sexual abuse which can result in physical or psychological harm or both, to the children involved'" *Id.* at 249, quoting Child Pornography Prevention Act of 1996, Pub.L.

No. 104–208, § 121, 110 Stat. 3009, at 3009–26 (1996)(codified as amended at 18 U.S.C. § 2251).[5] Further, this Circuit quoted the same findings which indicated that "where children are used in its production, child pornography permanently records the victim's abuse and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id.* at 250.

The Third Circuit does not distinguish between a distributor or mere consumer in child pornography "because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children' " *Id.* Furthermore, child pornography "inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as the result of the existence and use of these materials." *Id.*

In this case it is not alleged that defendant engaged in illicit physical contact with a minor, nor is it alleged that defendant directly solicited a minor. However, the fact that defendant is not charged with physically abusing a minor is not a bar to detention. *See United States v. Nicholson,* CR–06–750–PHX–DGC, 2006 U.S. Dist. LEXIS 67387, *6 (D.Az. 2006)("[t]here can be no doubt that those who consume and distribute this material [child pornography] encourage its production, as there can be no doubt that the

production of such materials involves the abuse of children"); *United States v. Reiner,* 468 F.Supp.2d. 393 (E.D.N.Y.2006); *United States v. Havens,* 487 F.Supp.2d 335 (W.D.N.Y.2007); *United States v. Falcon,* Crim. No. 06–60090–01, 207 U.S. Dist. LEXIS 44358 (W.D.La.2007); *United States v. Stram,* Crim. No. 07–cr–050–01 PB, 2007 WL 529668 (D.N.H.2007). As noted, the mere receipt of child pornography is dangerous and encourages illicit activity. Furthermore, this is not an instance where defendant inadvertently received a handful of images. Defendant is charged with receiving and distributing 799 digital images and nine movies of child pornography.[6] In addition, the events that occurred at the time of his arrest highlight the egregious circumstances surrounding the charges against defendant. Defendant was arrested moments before he believed he was going to view on a webcam the live molestation of a five-year old girl.

As to defendant's sentence, the government alleges that defendant faces a mandatory minimum sentence of five years in prison. The government also alleges that under the sentencing guidelines defendant faces a sentence of 12–15 years in prison.

*(2) Weight of the Evidence*

The second factor this Court must examine in its detention analysis is the "weight of the evidence." In this case the evidence agent defendant, which includes the transcriptions of his communications with an undercover agent, the images contained in his confiscated computer and "computer

---

5. Although this case involves a prosecution pursuant to section 2252(a)(1), and not section 2251, the Third Circuit noted that the congressional findings underlying the Child Pornography Prevention Act of 1996 are relevant to closely related statutes designed to prosecute child pornography offenses successfully. *MacEwan, supra,* 445 F.3d at 250 n. 12.

6. The Court has not received a report identifying the nature and number of images contained on two "compact disks" obtained from defendant which defendant identified as containing all of his "digital images containing child pornography."

disks," and his post-arrest statement to the police is very strong. In fact, defendant has already given a written statement confessing his guilt and indicated at his detention hearing that he intends to plead guilty.

### (3) History and Characteristics of the Defendant

The third factor this Court must examine in its detention analysis is the history and characteristics of the defendant. Defendant is 41 years old, married and has two children. By all accounts defendant is a well-respected police officer and member of the community. The Court has not been presented with evidence of any "marks" in plaintiff's history other than the charges in this case. The Court notes that defendant's brother also works for the Pennsauken Police Department. In addition, defendant's father is a retired police officer.

### (4) Nature and Seriousness of the Danger to Any Person or the Community

The fourth factor this Court must examine in its detention analysis is the nature and seriousness of the danger to any person or the community if the defendant is released. No evidence has been presented that defendant molested or physically abused a child. Nevertheless, this Court has already discussed the fact that child pornography is an insidious offense that is dangerous to the entire community, not just minors. The Court also cited case law and congressional reports discussing that the receipt and exchange of child pornography in and of itself is dangerous.

Although there may be instances when bail is appropriate for a defendant charged with receiving and distributing child pornography [7], this is not such an

instance. The available evidence clearly demonstrates, and defendant concedes, he received and distributed a substantial number of images and films of child pornography. These images were graphic and included scenes of bondage and physical abuse. Furthermore, although this Court is not prepared at this time to go so far as to opine that defendant actively encouraged the molestation of a five-year old girl in Tennessee, there is no question defendant believed and expected this was going to occur and he intended to watch it live on a webcam. There is also no question that defendant did not take any steps to stop the molestation he hoped was going to occur. The fact that defendant was willing to permit this abuse to take place is a window into his character. Furthermore, defendant reviewed and distributed child pornography using his police computer while he was working at his police station. If the defendant viewed and exchanged child pornography under these circumstances, it is difficult to conceive of a situation that would deter him from his illegal conduct. In addition, the fact that a trusted police officer engaged in the charged illegal activities is especially egregious. Defendant betrayed his oath of office and the trust placed in him by his family, employer and the community at large. If defendant betrayed this trust, no assurances can be given that he would not also violate any condition of release this Court imposed, no matter how stringent.

Although defendant will agree not to use or access a computer, this condition of release is difficult to enforce. "The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require exten-

---

7. See, e.g., United States v. Carney, No. CRIM. 06–350, 2006 WL 3231950 (W.D.Pa.2006); United States v. Thomas, No. CRIM. CCB–03–0150, 2006 WL 140558 (D.Md.2006).

sive citation or discussion." *United States v. Voelker,* 489 F.3d 139, 145 (3d Cir.2007). *See also United States v. Reiner, supra,* 468 F.Supp.2d at 398–99. Access to the internet is possible through desktop and laptop computers, phones, blackberries, etc. Given defendant's computer expertise and police background, this Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from viewing or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities. As noted in *United States v. Falcon, supra* at * 15–16:

> "It is not possible to formulate conditions of release which would completely deprive ... a defendant of the ability to possess or attempt to possess additional child pornography, 'or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography, or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals' " (citation omitted).

This Court is mindful that the ability to predict future behavior is difficult.[8] Nevertheless, this Court believes defendant's statements weigh in favor of detention. After defendant was arrested he admitted he had a "sickness" and "that he did not know why he did it." The Court is not prepared to decide at this time if defendant is addicted to child pornography or if he is a pedophile. Nevertheless, at a minimum, defendant's statements evidence that he is not able to control his future behavior even if he is released with strict conditions.

As to defendant's risk of flight, the court is not confident defendant will appear in the future given his knowledge of police practices and procedures and his computer expertise. It is not far-fetched to believe that this knowledge will enable defendant to avoid detection if he flees. *See United States v. Abad,* 350 F.3d 793, 800 (8th Cir.2003) (citations omitted)(reversing the District Judge's decision granting defendant bail and noting, *inter alia,* the ease of travel to Mexico and Canada. Also noting home detention, family assurances and electronic monitoring are not sufficient to justify bail in view of strong evidence that the defendant presented a risk of flight and danger to the community). Furthermore, defendant faces a certain substantial prison sentence and the loss of any stature or prestige he held in his community. In addition, as a former police officer defendant is aware of the risks he faces in prison to his personal safety. This combination of factors creates a substantial incentive for defendant to flee.

*Summary*

For all the foregoing reasons, the Court finds that detention is appropriate and has entered an Order of Detention Pending Trial.

---

**8.** "Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions. By its very nature such a prediction is a far more speculative and difficult undertaking that the reconstruction of past events." *United States v. Perry, supra,* 788 F.2d at 114.