USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 96-1709 UNITED STATES OF AMERICA, Appellee, v. CHRISTOPHER B. CARROLL, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, Jr., U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ M. Kristin Spath, Assistant Federal Defender, Federal ___________________ Defender Office, on brief for appellant. Paul M. Gagnon, United States Attorney, and Jean B. Weld, _______________ ____________ Assistant United States Attorney, on brief for appellee. _________________________ February 3, 1997 _________________________ SELYA, Circuit Judge. In this case a jury convicted SELYA, Circuit Judge. _____________ defendant-appellant Christopher B. Carroll of violating a federal child pornography statute. Following the imposition of sentence, Carroll appeals. The key question involves an elusive comma. Having found the comma, we affirm. I. I. __ Background Background __________ In the summer of 1995, the appellant separated from his wife, Tammy. While sorting out her husband's personal effects, Tammy discovered two rolls of undeveloped film. The film contained 46 photographs of the appellant's adolescent niece, Brittany.1 Many of these photographs depicted Brittany in various states of undress, wearing her mother's lingerie, holding sex toys and inserting them in body cavities, and posing suggestively. After an investigation spearheaded by the Federal Bureau of Investigation (FBI), the government concluded that the appellant took these photographs on January 8, 1995 (when Brittany was 13 years of age). Carroll's indictment, trial, conviction, and sentencing followed. II. II. ___ Analysis Analysis ________ In this venue, the appellant advances two assignments of error. We discuss them in sequence.  ____________________ 1Brittany is a pseudonym which we employ in compliance with the confidentiality requirements of 18 U.S.C. 3509(d)(1) (1994). 2 A. A. __ Sufficiency of the Evidence Sufficiency of the Evidence ___________________________ The statute of conviction provides in relevant part: Any person who [1] employs, uses, persuades, induces, entices, or coerces any minor to engage in, or [2] who has a minor assist any other person to engage in, or [3] who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in[,] any sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided [by law] if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed. 18 U.S.C. 2251(a)(1994) (arabic numerals supplied; propriety of including bracketed comma to be discussed infra). In this _____ instance the government accused Carroll, under the first statutory category, of using or persuading Brittany to participate in making sexually explicit depictions. The judge instructed the jurors that, in order to convict, they must find that the government proved three elements beyond a reasonable doubt: (1) that the defendant "knowingly used or persuaded [the minor] to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct"; (2) that "at the time such conduct was engaged in, the defendant knew that [the minor] was under the age of eighteen years"; and (3) that the defendant "knew or had reason to know that such visual depiction would be transported in interstate commerce." The appellant 3 claims that the government did not prove the last of these elements and that the court therefore erred in denying his motion for judgment of acquittal. A trial court must enter a judgment of acquittal in a criminal case if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). We afford de novo review to Rule 29 determinations, see United States v. Olbres, 61 F.3d ___ _____________ ______ 967, 970 (1st Cir.), cert. denied, 116 S. Ct. 522 (1995), _____ ______ employing a familiar mantra: "If the evidence presented, taken in the light most flattering to the prosecution, together with all reasonable inferences favorable to it, permits a rational jury to find each essential element of the crime charged beyond a reasonable doubt, then the evidence is legally sufficient." Id. ___ In conducting this tamisage, we consider all the evidence, direct and circumstantial, and resolve all evidentiary conflicts in favor of the verdict. See United States v. Amparo, 961 F.2d 288, ___ _____________ ______ 290 (1st Cir.), cert. denied, 506 U.S. 878 (1992). Under this _____ ______ formula, the evidence before us suffices to sustain a finding that the appellant intended to transport the pornographic depictions in interstate commerce (and therefore knew that they would be so transported). The government sought to satisfy the interstate commerce element here in two ways, both featuring Brittany's testimony. One approach involved the intended use of the sexually explicit photographs. According to Brittany, the appellant discussed with her his plan to scan the images into a 4 friend's computer and distribute them on the Internet. This testimony, if believed, proved the government's point. Transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce. See United ___ ______ States v. Thomas, 74 F.3d 701, 706-07 (6th Cir.), cert. denied, ______ ______ _____ ______ 117 S. Ct. 74 (1996); United States v. Maxwell, 42 M.J. 568, 580 _____________ _______ (U.S.A.F.C.A. 1995). And here, since the photographs were taken in New Hampshire but the computer that Carroll allegedly planned to use was located in Massachusetts, interstate transportation perforce would have occurred when the appellant carried the fruits of his labor across the New Hampshire border into Massachusetts. The government's second approach involved the anticipated processing of the photographs. Brittany testified without contradiction that Carroll told her he was going to take the film to Massachusetts to be developed. If believed, this testimony, in and of itself, would forge the requisite interstate link. See 18 U.S.C. 10 (1994) (defining "interstate commerce" ___ for purposes of Title 18); cf. Rodriguez v. Clark Color Labs., ___ _________ _________________ 921 F.2d 347, 349 (1st Cir. 1990) (indicating in dictum that knowing mailing of undeveloped negatives across state lines satisfies interstate commerce element under child pornography statutes). The appellant mounts a ferocious attack on the credibility of Brittany's testimony. He notes, among other 5 things, that she did not mention the Internet connection when she first testified; that, on cross-examination, she originally said that her grandmother had told her that Carroll wanted to place her pictures on the Internet; and that she changed her story on redirect examination, asserting for the first time that the appellant had mentioned the Internet to her. He also assails Brittany's account of his supposed plan for developing the prints, stressing that she did not make this revelation until shortly before the trial. For purposes of Rule 29, the government's proof passes muster. The appellant's criticisms of Brittany's testimony go to the weight of the evidence, not to its sufficiency, and therefore were properly left to the jury. Some degree of inconsistency is not surprising when a minor testifies about traumatic events instigated by a close relative. Here, moreover, the inconsistencies came in response to a series of leading questions by defense counsel; on redirect, after refreshing her recollection by perusing reports of interviews she had given to an FBI agent, Brittany's memory cleared. In these circumstances, a fair-minded jury could easily believe that her refreshed recollection represented an accurate account of the relevant events and that Carroll took the photographs with the intention either to have them developed out of state, or to put them on the Internet, or both. This conclusion is reinforced by other evidence that supports Brittany's testimony on redirect examination. The 6 record suggests, for example, that the appellant and his friend (Doug Allen) had in the past attempted to scan pornographic images into Allen's computer, thus permitting the jury to infer that the two men knew how to circulate photographs on the Internet and might want to put Brittany's likenesses to similar use. Allen also testified that he and Carroll intended to form an on-line dating service utilizing both pictures and personal messages. Carroll apparently knew about a similar service being offered in New Hampshire which depicted topless females with black bars across their faces to conceal their identities. Given this background, Brittany's testimony that Carroll told her that he would put her picture on the Internet with a little black strip across her eyes could have suggested to a thoughtful jury that he intended to use the sexually explicit photographs to promote his embryonic dating service. We have said enough on this score. In the final analysis, the appellant's argument boils down to a plaint that the jury misjudged Brittany's veracity. Credibility determinations are, of course, squarely within the jury's domain. See United States v. Romero, 32 F.3d 641, 646 (1st Cir. 1994); ___ _____________ ______ United States v. O'Brien, 14 F.3d 703, 706-07 (1st Cir. 1994). ______________ _______ Eyewitness testimony is rarely seamless, and appellate courts ordinarily should decline invitations to second-guess a jury's considered decision about whether to credit particular testimony despite the fact that it contains inconsistencies. This case falls comfortably within the sweep of that generality. Resolving 7 evidentiary conflicts and drawing reasonable inferences in the government's favor, as the Rule 29 standard requires, see Olbres, ___ ______ 61 F.3d at 970, the evidence is adequate to support a finding that the appellant intended to transport the sexually explicit photographs in interstate commerce. No more is exigible. B. B. __ The Judge's Charge The Judge's Charge __________________ The appellant's next point is grammatically intriguing but legally impuissant. He posits that a trial judge has an obligation to instruct the jury on every element of the offense of conviction, that flouting this obligation constitutes reversible error, and that such a lapse occurred here. In the circumstances of this case, we agree with the first two-thirds of the appellant's triangular hypothesis, see, e.g., United States ___ ____ _____________ v. DiRico, 78 F.3d 732, 735 (1st Cir. 1996), but we take issue ______ with his conclusion that the charge omitted necessary information. In enumerating the elements of the offense, the judge refused to include a requirement that the government prove the defendant knowingly persuaded the minor to engage in sexually explicit conduct "with the intent that such minor engage in" such conduct for the purpose of producing a visual depiction thereof. It is to this omission that the appellant assigns error, asserting that section 2251(a) must be read so that the phrase quoted above modifies all three types of actions criminalized 8 under the statute, namely, (1) employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct (the "use" category, under which Carroll was charged); (2) having a minor assist another person to engage in such conduct (the "assistance" category); and (3) transporting a minor in interstate or foreign commerce (the "transportation" category). This assertion depends almost entirely on the absence of punctuation immediately following the quoted phrase; it is only the putative lack of a comma that makes arguable the theory that the phrase modifies the trailing phrase "any sexually explicit conduct" and, thus, applies to all three categories of proscribed behavior.2 For reasons that will appear, the district court bought into the proposition that no comma lurked in the critical place  ____________________ 2A graphic iteration of a portion of the statute may help to illustrate the point: Any person [1] who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or [2] who has a minor assist any other person to engage in, or [3] who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the ________ intent that such minor engage in[,] any any _____________________________________ sexually explicit conduct for the purpose of sexually explicit conduct for the purpose of producing any visual depiction of such producing any visual depiction of such conduct. . . . conduct. . . . 18 U.S.C. 2251(a) (arabic numerals, underscoring, and bold facing supplied). The issue is whether the underscored phrase should be read as accompanying the passage in bold face, or whether it should be considered a part of what we have termed the third category of proscribed conduct (and, thus, does not modify the passage in bold face). This depends, in part, on whether the text contains the bracketed comma. 9 and acted upon this perception; it assumed that Congress inadvertently omitted the comma, read the statute as if it were there, and confined the quoted phrase to the third category of proscribed conduct (transportation).3 We review the district court's solution to this enigma de novo. See Strickland v. ___ __________ Commissioner, Me. Dep't of Human Servs., 96 F.3d 542, 545 (1st _________________________________________ Cir. 1996) (holding that questions of statutory construction receive nondeferential review). Insofar as we can tell, the judge's underlying premise that the statute did not contain a comma in the critical place arose because both parties conceded as much below (as they do on appeal); other federal courts had accepted the premise as true, see, e.g., United States v. Thomas, 893 F.2d 1066, 1068 ___ ____ _____________ ______ (9th Cir.), cert. denied, 498 U.S. 826 (1990); and the statute as _____ ______ printed in updates of the United States Code Annotated, e.g., ____ West Supp. 1996, and as rendered in at least one computerized legal research data base, omitted the comma. But appearances often are deceiving. See Aesop, The Wolf in Sheep's Clothing ___ ______________________________ (circa 550 B.C.). In point of fact, the authoritative version of the statute does contain the elusive comma. Congress added the language in question by enacting Pub. L. 99-628, 3, 100 Stat. 3510 (1986). The text of the amendment, as disclosed in the  ____________________ 3The court impliedly premised this interpretive rationale on its power to "disregard the punctuation [contained in a statute], or repunctuate, if need be, [in order] to render the true meaning of the statute." United States Nat'l Bank v. Independent Ins. _________________________ ________________ Agents of Am., Inc., 508 U.S. 439, 462 (1993) (citations ______________________ omitted). 10 Statutes at Large, shows a comma after "engage in." Conflicts between the text of a statute as it appears in the Statutes at Large, on one hand, and in usually reliable but unofficial sources such as the United States Code Annotated, on the other hand, are rare, but, when they occur, the rendition of the law contained in the Statutes at Large controls.4 See United States ___ _____________ Nat'l Bank v. Independent Ins. Agents of Am., Inc., 508 U.S. 439, __________ ____________________________________ 448 (1993). Having made the determination that section 2251(a) actually contains (and thus is to be read with) a comma after the phrase "with the intent that such minor engage in," we readily conclude that the district judge described the essential elements of the offense correctly in his jury instructions. With the comma in place, we regard the proper interpretation of the statute as self-evident. Wherever possible, statutes should be construed in a commonsense manner, O'Connell v. Shalala, 79 F.3d _________ _______ 170, 176 (1st Cir. 1996), honoring plain meaning, In re Thinking ______________ Machines Corp., 67 F.3d 1021, 1024-25 (1st Cir. 1995), and _______________ avoiding absurd or counterintuitive results, Sullivan v. CIA, 992 ________ ___ F.2d 1249, 1252 (1st Cir. 1993). In this instance the phrase in question, read naturally, modifies only the transportation category. Any other reading would defeat the linguistic parallelism which marks section 2251(a) and would result in a curiously lopsided piece of  ____________________ 4In all events, recent versions of the United States Code (as opposed to the United States Code Annotated) include a comma at the critical place. 11 legislation.5 Here, too, a construction consistent with plain meaning comports with the logic of the statute. One who persuades a minor to engage in sexually explicit conduct, or who has a minor assist another person in such conduct, commits an act which in and of itself is worthy of criminal sanction. By contrast, one who transports a minor across state lines (no more, no less) has done nothing inherently wrong unless his intent at the time is blameworthy. On that basis, the idea that section 2251(a) embodies an additional scienter requirement (having an intent that the minor thereafter engage in proscribed conduct) solely with reference to the transportation category is both easily explicable and eminently sensible. Cf. O'Connell, 79 F.3d ___ _________ at 176 (counselling courts to examine "the statute as a whole, giving due weight to design, structure, and purpose as well as to aggregate language"). The history of section 2251(a) supports this interpretation. Congress amended the law in 1986 to engraft the transportation category (including the disputed phrase) onto section 2251(a). Prior to this amendment, the use category, like the assistance category, required proof only of the three elements that the judge included in his charge. See Pub. L. 95- ___ 225, 2(a), 92 Stat. 7 (1978). To suggest, in the absence of any confirmatory legislative history, that the 1986 amendment added a new intent element to both the use and assistance  ____________________ 5As mentioned earlier, the statute criminalizes three separate types of conduct, and each category is described in a clause ending with the words "engage in." 12 categories, instead of merely supplying an additional, self- contained category, strains credulity. See generally ___ _________ Passamaquoddy Tribe v. State of Me., 75 F.3d 784, 788-89 (1st ___________________ _____________ Cir. 1996) (in interpreting statutes, courts should take into account preexisting statutory provisions). To recapitulate, we hold that the phrase "with the intent that such minor engage in" sexually explicit conduct does not apply to the use category of section 2251(a). It follows that the trial court's instructions accurately limned the essential elements of the offense. III. III. ____ Conclusion Conclusion __________ We need go no further. Having dispatched the seeming grammatical anomaly, no serious question remains. It clearly appears that the appellant was fairly tried and lawfully convicted. Accordingly, the judgment below must be Affirmed. Affirmed. ________ 13