<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1990

                         UNITED STATES,
                      Plaintiff, Appellee,

                               v.

                    ABRAHAM SERRANO-OSORIO,
          a/k/a CASQUERO, a/k/a ABRAHAM COLON-OSORIO,
                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Juan M. Prez-Gimnez, U.S. District Judge]

                      ____________________

                             Before

                    Lynch, Noonan and Lipez,

                         Circuit Judges.

                     _____________________

   Ignacio Fernndez-de Lahongrais, by appointment of the Court,  
for appellant.
   Camille Vlez-Riv, Assistant United States Attorney, with
whom Guillermo Gil, United States Attorney, and Jorge E. Vega-
Pacheco, Assistant United States Attorney, Chief, Criminal
Division, were on brief, for appellee.

                      ____________________

                       August 30, 1999
                     ____________________

        NOONAN, Circuit Judge.  Abraham Serrano-Osorio (Serrano)
appeals his conviction for carjacking in violation of 18 U.S.C.
2119(2) & (3) and his life sentence for murder in connection
therewith, together with his conviction of using a firearm in the
carjacking in violation of 18 U.S.C.  924(c)(1)(3).  We affirm the
judgment of the district court.
                             FACTS
        At trial, the government's principal witness, Wilfredo
Cabrera-Batista (Cabrera) testified that on January 19, 1993 he was
a security guard for St. James Company standing in the town square
of Ro Grande, Puerto Rico at about 6:30 in the evening.  An
acquaintance, Rubn Rivera-Trujillo (Rivera), drove by in a
champagne-colored Mitsubishi Montero.  Cabrera asked Rivera for a
ride.  After driving a block they passed Serrano on a street
corner.  Serrano had known Cabrera for nine years and asked Cabrera
if he too could have a ride.  Cabrera, in turn, asked Rivera to
oblige Serrano because Serrano was going to the same area where
Cabrera lived.  Rivera agreed.  Cabrera got in the back seat and
Serrano the front passenger seat.
        Immediately after getting in, Serrano pulled something
from his waist that Cabrera could not see and told Rivera to take
him to a different area, "La Pescadera" in Loza.  Rivera
complied.  When they reached La Pescadera Serrano told Rivera to
stop the car and ordered both Rivera and Cabrera to get out.  When
he got out, Cabrera saw that Serrano had a revolver in his hand.  
Serrano grabbed Rivera by the neck and put the gun to his head.  
They both fell to the ground.  Cabrera asked Serrano if he needed
money and threw $180 on the ground near him.  He heard two shots
and saw Serrano pointing the gun at Rivera's head.  He then ran and
was himself shot in the buttocks and in the back.  Serrano,
however, did not pursue him.  Cabrera escaped into a pasture and
from a hill saw Serrano drive off in the Mitsubishi Montero.  The
medical examiner testified that Rivera died by gunshot to his head.  
Another witness testified that later in the evening Serrano arrived
at a grocery store in a champagne-colored Mitsubishi Montero and
that he carried a gun in the right-hand pocket of his jeans.
        The government also presented evidence that the FBI took
Cabrera's statement on February 25, 1994 as to what had happened
and that Cabrera had identified Serrano as the carjacker and killer
of Rivera.  The FBI searched for Serrano in Puerto Rico and was
unable to find him although he continued to have property in Puerto
Rico.  A fugitive investigation ensued.  On June 29, 1995 the FBI
arrested Serrano in the Dominican Republic.
        The defense introduced a single witness, a notary public
and attorney, Noem Caraballo-Lpez (Caraballo), who had been a
lawyer for 11 years.  She testified that on May 31, 1997 Cabrera
had come to her office and stated that he wanted to make a sworn
statement.  She took notes of what he wanted to say and gave them
to her secretary who typed them out.  After the statement was typed
she read it to Cabrera, who signed it.  The document ended with two
declarations:  "I sign this statement without having been
intimidated fully and voluntarily and without any coercion
whatsoever."  And:  "What I have stated is the truth and nothing
but the truth, in witness whereof I sign this statement in Ro
Grande, Puerto Rico on May 31, 1997."
        In this sworn statement Cabrera declared that an argument
had arisen between Rivera and Serrano; that Rivera got out of the
car and started looking under the seat and took out a firearm; that
then Serrano got out and began to struggle with Rivera on account
of the gun; and that eventually Serrano succeeded in taking the gun
from Rivera and shot him.  At the trial Cabrera stated that he
supplied this statement because he was paid $140 by the brother of
Serrano who asked him to help get his brother out of the carjacking
charge and told Cabrera that he would give him $5,000 more if his
brother did get out of the charge.  He further stated that he was
intimidated by the brother and two other men and that the notary
public had been chosen by Serrano's wife.
                          PROCEEDINGS
        On July 5, 1995, Serrano was indicted.  A jury trial
began on February 17, 1998.  At the conclusion of the evidence
Serrano moved under Federal Rule of Criminal Procedure 29 for a
judgment of acquittal, which the court denied.
        Serrano did not object to the evidence offered as to the
FBI search for him in Puerto Rico and its subsequent fugitive
investigation.  He did argue that the court should not instruct the
jury as to flight.  The court, however, instructed the jury that it
could consider intentional flight by the defendant, noting that in
its consideration of the evidence of flight the jury should
consider that "there may be reasons for the defendant's actions
that are fully consistent with innocence."  The court also reminded
the jury that the government had the burden of proof as to whether
the defendant had engaged in intentional flight.  Serrano made no
objection to the instructions actually given.
        The jury convicted Serrano of carjacking and of use of a
gun.  At the sentencing hearing Serrano moved for a downward
departure pursuant to U.S.S.G.  2A1.1, Application Note 1.  The
government replied that Serrano was guilty of felony murder.  The
court heard an allocution from Serrano in which he declared that he
was innocent of intentionally killing Rivera.  The court held that
Rivera had been killed under circumstances that would constitute
murder under 18 U.S.C.  1111 and that therefore U.S.S.G.  2B3.1
& 2A1.1 set a base offense level of 43, requiring Serrano be
sentenced to life imprisonment.
        Serrano appeals.
                            ANALYSIS
        The Evidence of Guilt.  Serrano contends that the
government's case depends on the testimony of Cabrera and that that
testimony was perjured.  This contention is based solely on the
inconsistency between Cabrera's sworn statement before the notary
and his testimony at trial.  No doubt the statement before the
notary shows the events in a different light from Cabrera's trial
testimony, but it was the province of the jury to decide if and
when he was telling the truth.  He explained why his statement to
the notary was not true.  That a  man can lie on one occasion does
not establish that he is a perjurer in court.  We will not second
guess the jury's belief that he told the truth to it.  See United
States v. Carroll, 105 F.3d 740, 742 (1st Cir.), cert. denied, 520
U.S. 1258 (1997).
        The Flight Instruction.  It was doubtful that Serrano
effectively objected to the court instructing the jury on flight.  
Assuming, however, without deciding that there is an objection, the
court did not err in what it did tell the jury it might consider if
the government had convinced the jurors that Serrano had fled the
jurisdiction.  See United States v. Hernndez-Bermdez, 857 F.2d
50, 52 (1st Cir. 1983).
        The Constitutionality of the Carjacking Statute.  Serrano
argues that 18 U.S.C.  2119 is not within the commerce powers of
the Congress.  We have rejected this contention.  See United States
v. Rivera-Figueroa, 149 F.3d 1, 3-4 (1st Cir.), cert. denied sub
nom. Rodrguez-Rodrguez v. United States, ___ U.S. ___, 119 S. Ct.
251 (1998).
        The Sentence.  The district court did not err in ruling
that Serrano had committed felony murder.  18 U.S.C.  1111.  The
district court's refusal to depart downward under Application Note
1 to U.S.S.G.  2A1.1 is not reviewable.
        AFFIRMED.

</body>

</html>