[Cite as *State v. Taylor*, 2024-Ohio-2107.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                    Court of Appeals No.  H-23-021

    Appellee                                 Trial Court No.  CRI 2022-0170

v.

Kyle M. Taylor                              **DECISION AND JUDGMENT**

    Appellant                                Decided:  May 31, 2024

* * * * *

James Joel Sitterly, Huron County Prosecuting Attorney, and
Melissa A. Angst, Assistant Prosecuting Attorney, for appellee.

Sarah A. Nation, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury trial, defendant-appellant, Kyle M. Taylor, appeals the July 10, 2023 judgment of the Huron County Court of Common Pleas, convicting him of 13 counts of pandering obscenity involving a minor and 14 counts of pandering sexually-oriented matter involving a minor, and sentencing him to a total prison term of 35 years to 37 and one-half years.  For the following, we affirm, in part, and reverse, in part.

## I. Background

{¶ 2} Kyle Taylor was charged with seven counts of pandering obscenity involving a minor, violations of R.C. 2907.321(A)(1) and (C), second-degree felonies (Counts 7 through 12 and 19); six counts of pandering obscenity involving a minor, violations of R.C. 2907.321(A)(6) and (C), second-degree felonies (Counts 13 through 18); six counts of pandering sexually-oriented matter involving a minor, violations of R.C. 2907.322(A)(1) and (C), second-degree felonies (Counts 20 through 25); and pandering sexually-oriented matter involving a minor, violations of R.C. 2907.322(A)(5) and (C), fourth-degree felonies (Counts 26 through 33).

{¶ 3} According to the evidence presented at trial, in connection with another investigation, police conducted a forensic search of Taylor's Samsung phone and recovered approximately 511 videos and one photo depicting the rapes of children or children engaging in sexual activity, masturbation, or bestiality. The videos and photo were recovered from a folder called "porn," which had been saved, but then deleted, from the phone's SD card.

{¶ 4} Taylor defended against the charges by arguing (1) his ex-girlfriend, who routinely took his phone from him as punishment, uploaded the videos and photo in an effort to "frame" him; (2) there was no evidence that he created, reproduced, or published or brought or caused to be brought into this state any obscene material involving a minor; and (3) there was no evidence that he created, recorded, photographed, filmed, developed, reproduced, or published, or knowingly solicited, received, purchased,

2.

exchanged, possessed, or controlled any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality.

{¶ 5} The jury found Taylor guilty of all counts. The trial court sentenced him to an indefinite prison term of a minimum of five years and a maximum of seven and one-half years on Counts 7 through 12 and 19, to be served consecutively; an indefinite prison term of a minimum of five years and a maximum of seven and one-half years on Counts 13 through 18, to be served concurrently to each other and to all other charges; an indefinite prison term of a minimum of five years and a maximum of seven and one-half years on Counts 20 through 25, to be served concurrently to each other and to all charges; and one year in prison on Counts 26 through 33, to be served concurrently to each other and to all other charges. In all, Taylor was ordered to serve a minimum prison term of 35 years and a maximum prison term of 37 and one-half years.

{¶ 6} Taylor appealed. He assigns the following errors for our review:

I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN THE COURT SENTENCED APPELLANT USING INFORMATION FROM A SOURCE OUTSIDE THOSE AUTHORIZE[D] BY R.C. 2929.19(B)(1)(a).

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION OF COUNTS 13-18 WITHOUT PROOF THAT APPELLANT COMMITTED THE ACT OF BRINGING CHILD PORNOGRAPHY INTO THE STATE.

3.

## II. Law and Analysis

**{¶ 7}** In his first assignment of error, Taylor challenges the trial court's consideration at sentencing of a report from the jail, which alleged that Taylor had engaged in sexual activity while incarcerated there. In his second assignment of error, he challenges his convictions of Counts 13 to 18 because he contends that the State failed to offer evidence showing that he brought or caused to be brought into the state obscene material portraying children, as required for a conviction under R.C. 2907.321(A)(6). We address each of his assignments in turn.

### A. Sentencing

**{¶ 8}** In his first assignment of error, Taylor argues that his sentence is contrary to law because in fashioning his sentence, the trial court relied on information from a source outside of those authorized by RC. 2929.l9(B)(1)(a). Specifically, Taylor maintains that the trial court reviewed a report from the jail indicating that Taylor had been disciplined for "act[ing] out sexually." He also complains that he was not permitted to respond to the allegations contained in the report, as required under Crim.R. 32(A)(1).

**{¶ 9}** The State acknowledges that an incident report was faxed from the jail to the trial court five minutes before the sentencing hearing was scheduled to begin, but it maintains that the report was shared with counsel, defense counsel did not object or request a continuance, defense counsel spoke on Taylor's behalf, Taylor was permitted to address the report, and, in fact, Taylor questioned the trial judge about the extent to which he was relying on the incident report in fashioning his sentence. The State maintains that there was no unfair surprise and the court referenced the report only with respect to

4.

Taylor's lack of remorse. It emphasizes that the court made clear that the sentence was imposed based on Taylor's entire history—and specifically to protect the public from Taylor's "proclivity toward preying on children"—and was not imposed because of acts Taylor committed while in jail. The State insists that any error in considering the report was harmless because the jail incident played only a de minimis role in the sentence imposed. It contends that Taylor's sentence was supported by the record given that he was on community control when he committed the offenses, he was on post-release control for the attempted rape of a minor child, he had a juvenile adjudication in Erie County, and his ORAS score was high.

### 1. The Court's Rationale for Taylor's Sentence

{¶ 10} The trial judge provided the following explanation for Taylor's sentence:

In looking at the factors to consider in felony cases, the Court would note here that there are victims of child pornography. Here the Court, jury and parties had to witness the type of child pornography that was being collected in this instance by Mr. Taylor. It was of most grievous kind [sic]. Certainly, involved what could only be described as acts of child rape and beastiality [sic]; certainly, not the kind of thing that's tolerated in a decent society.

As far as other relevant factors, it wasn't just one accidental recording. According to police report [sic], there were 493 of those videos. The State did not choose to charge him with all of those individual acts, but

5.

certainly, shows a massive proclivity to continue to look out, seek out, these types of activities.

As far as it being less serious, there's really no factors that apply.

Looking at recidivism being more likely, that's certainly the driving factor in the Court's sentence here.

First of all, the Court would note that you were on PRC, and that was for a sex offense against a juvenile. You had been punished with a five-year prison sentence. You were also on ISP, intensive supervised probation, through Norwalk at the time that you continued to act out in these fashions.

In addition you have a history as a juvenile including assault and unruly [sic], probation violations as a juvenile as well.

Your adult history in addition to the attempted rape conviction included domestic violence charge, CCW charge, criminal damaging, trespass. You have been to prison.

In addition, as [the State's attorney] indicated, there was an incident in Erie County, which resulted in the assault charge. The striking thing to the Court is the allegations in the Erie County case, the allegations in the underlying attempted rape case, and the allegations that were brought to a Grand Jury here, although those charges didn't go forward, did indicate a very similar striking pattern of acting aggressively towards underage

6.

children, the most vulnerable and unprotected folks in our society, and acting out on them in a sexual fashion.

As far as the remorse of the defendant, *the Court had been informed by the jail that he continues to act out sexually. He's been disciplined for that in the jail as well.* It doesn't appear to be a case in where [sic] the defendant is subject to rehabilitation in this instance.

In looking at remorse, the Court can't find that there's any here. There was a complete denial of the activities. He continues to blame other people for his actions as he goes forward.

The Court as far as protection of the public certainly believes that the children of this community would not be safe when you are on the streets.

As far as recidivism being less likely, the Court finds that there are no factors to be found in your favor.

The ORAS score was high at 26, a high risk of recidivism going forward.

I want it to be clear for the record before I give the sentence, the nature of the sentence is intended the overwhelming feature of the sentence [sic] is to protect the public from future instances of abuse by you. You have demonstrated a proclivity toward preying on children in the community. I don't believe that is something that would stop if you were released. (Emphasis added.)

**{¶ 11}** After the trial judge announced Taylor's sentence, Taylor inquired whether his sentence was based on the report received from the jail. He and the trial judge engaged in the following dialogue:

> [Taylor]: I do want to say a couple things though. A couple questions really.
>
> Like are you really comparing a potential homosexual act, are you really comparing that to these charges right here?
>
> The court: No. What I've done is I reviewed your history. I get a presentence investigation. I get a chance to review that. I looked over—
>
> [Taylor]: Because –
>
> The court: – how you've acted out in this community over time. I find you to be one of the most evil people that have appeared in front of me. [Defense counsel] wants to compare you to other defendants that have appeared here, I find that you are most likely to prey on additional children if I were to release you.
>
> [Taylor]: Because of acts that were done while – since I've been in the jail?
>
> The court: No, I'm talking about your entire history. That's what I'm looking at. Okay?

### 2. Standard of Review

**{¶ 12}** We review a challenge to a felony sentence under R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify

8.

a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

> (a)That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b)That the sentence is otherwise contrary to law.

{¶ 13} Taylor does not complain that his sentence violated R.C. 2953.08(G)(2)(a); he argues that his sentence was "otherwise contrary to law" under R.C. 2953.08(G)(2)(b). The Ohio Supreme Court has explained that a sentence is "otherwise contrary to law" if it is "in violation of statute or legal regulations at a given time." (Internal quotations omitted.) *State v. Bryant*, 2022-Ohio-1878, ¶ 22, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* (6th Ed. 1990).

{¶ 14} Under R.C. 2929.19(B)(1)(a), when sentencing an offender, a trial court must consider the following information at the sentencing hearing: (1) the record; (2) any information presented at the hearing by the offender, the prosecuting attorney, the victim or the victim's representative, and any other person approved by the trial court; (3) the presentence investigation report; and (4) any victim impact statement. Under Crim.R. 32(A)(1) "[a]t the time of imposing sentence, the court shall . . . [a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."

9.

{¶ 15} This court has recognized that a sentence may be "contrary to law" where the trial court relies on information from a source outside of those authorized by R.C. 2929.19(B)(1)(a). *State v. Fowler,* 2022-Ohio-3499, ¶ 15 (6th Dist.); *State v. Sears,* 2023-Ohio-1925, ¶ 7 (6th Dist.). Moreover, we have found that under Crim.R. 32(A)(1), "[a] trial court errs when it does not let the defendant address new information introduced and considered by the trial court at sentencing." *Sears* at ¶ 21. If a trial court commits error under R.C. 2929.19(B)(1) or Crim.R. 32(A)(1), we must determine whether such error constitutes reversible error. *Id.* at ¶ 18. Error in violating Crim.R. 32(A)(1) "is presumed prejudicial because the defendant is prevented from speaking at the appropriate time." *Id.* at ¶ 21.

{¶ 16} In resolving Taylor's first assignment of error, therefore, we must consider (1) whether, in fashioning Taylor's sentence, the trial court considered information from a source outside of those authorized by R.C. 2929.19(B)(1)(a); (2) whether the trial court failed to allow Taylor an opportunity to comment on this information; and (3) if so, whether consideration of the information constituted reversible error.

### 3. Consideration of the Report from the Jail and Taylor's Ability to Address It

{¶ 17} The report the trial court received just minutes before Taylor's sentencing hearing indicated that Taylor engaged in consensual sexual activity with another inmate in the shower of the Huron County jail on May 27, 2023. The incident was deemed a serious violation of the jail's rules, but the investigating officers concluded that there was no evidence to support the filing of any criminal charges. The trial judge had this report

10.

before sentencing Taylor, shared the report with the State's attorney and defense counsel, and briefly referenced the report in concluding that Taylor had demonstrated a lack of remorse.

{¶ 18} R.C. 2929.19(A) provides that at the sentencing hearing, "with the approval of the court, any other person may present information relevant to the imposition of sentence in the case." In *State v. Yates*, 2011-Ohio-3619, (2d Dist.), during Yates's sentencing hearing, the trial court informed him that it had received a report from his bail bondsperson indicating that he had been transporting drugs interstate while out on bond, which the trial court relied upon in sentencing Yates. The Second District acknowledged that the report could be considered because R.C. 2929.19(B)(1) allows a trial judge to consider "the record and 'any information presented at the hearing by any person' that is relevant to the imposition of sentence." *Id.* at ¶ 15. However, it determined that the trial court committed reversible error because (1) the report constituted new information; (2) it was unclear whether it had been disclosed to Yates and his attorney before the hearing; (3) the trial court did not allow Yates to respond to the information contained in the report; and (4) the report was not made part of the record.

{¶ 19} In *State v. Sanders,* 2003-Ohio-1163, ¶ 6 (8th Dist.), the Eighth District acknowledged that the trial court considered Sanders's institutional record, which included a number of disciplinary reports. It found no error in the court's consideration of Sanders's institutional record, but it found reversible error because sentencing occurred over four different hearings and the trial court did not permit Sanders an

11.

opportunity to address some of the information that had been presented over the course of those hearings.

{¶ 20} In *State v. Smith*, 2013-Ohio-2580 (2d Dist.), the trial court was presented with a report from the Warren County Drug Task Force and a Warren County indictment, which it took into consideration in sentencing Smith. Although it was unclear how the trial court was presented with the information, the Second District concluded that the court was allowed to consider it because Smith was aware of the information and the documents were part of the record on appeal, which the appellate court was able to review.

{¶ 21} We conclude that like the bondsperson's report in *Yates*, the institutional record in *Sanders*, and the report from the Warren County Drug Task Force and Warren County indictment in *Smith,* the incident report faxed by the jail was of a type permitted by R.C. 2929.19(B)(1)(a). We find that the report from the jail is distinguishable from the types of information that we found were improperly considered in *Fowler,* 2022-Ohio-3499, and *Sears*, 2023-Ohio-1925, both of which Taylor cites.

{¶ 22} In *Fowler,* Fowler was convicted of vehicular homicide arising from his operation of a motorcycle. At sentencing, he maintained that the crash was "a complete accident." *Id.* at ¶ 9. The trial judge expressed that he was skeptical of this characterization. He commented that he lived very close to where the accident occurred, and his wife had told him that she could hear the motorcycle and knew by the pitch of the engine that it was moving quickly and there would be an accident. Immediately thereafter, he sentenced Fowler without allowing him or his attorney an opportunity to

12.

respond to these comments. We found that Fowler's sentence was contrary to law because the trial court relied on information from a source outside of those authorized by R.C. 2929.19(B)(1)(a)—i.e., his wife's observations—and we found that Fowler's right of allocution under Crim.R. 32(A)(1) was violated because neither he nor his attorney was afforded an opportunity to respond to the new information. We found that these errors were not harmless because it was clear that the court relied heavily on this information to rebut Fowler's explanation of events.

{¶ 23} In *Sears*, Sears was convicted of the aggravated possession of drugs. At the sentencing hearing, the trial judge revealed that in addition to reviewing the PSI, he had an oral conversation with an employee of the Ottawa County probation department who said that he had communicated with the APA and had spoken with the probation department in Sandusky County, where Sears was facing other criminal charges. The court told Sears that the Ottawa County probation department, Sandusky County, and the APA all agreed that he is not amenable to community control. "So," the court told Sears, "I will find that you're not amenable to community control." It immediately proceeded to sentence Sears without allowing him to respond to these comments. We found that the trial judge violated R.C. 2929.19(B)(1)(a) by considering information of the type not enumerated in the statute—i.e., oral communications concerning other agencies' conclusions, which were not presented at or disclosed before the sentencing hearing or made part of the record—and violated Crim.R. 32(A)(1) by failing to allow Sears an opportunity to respond to the new information before proceeding to sentence him. We

13.

concluded that these errors were not harmless because it was clear that the court relied on this information in sentencing Sears.

{¶ 24} The information the trial judge relied on here and the circumstances of its disclosure differs from the information relied on by the trial judges in *Fowler* and *Sears.* First, the information was communicated in written form. In fact, the State filed an unopposed motion to supplement the record to include the report, which this court granted on February 6, 2024. Therefore, we were able to review the information. Second, the report was immediately presented to counsel for the State and defense counsel *before* the hearing. Despite being aware of the report, defense counsel did not object on the record or request a continuance of the sentencing hearing. Third, although Taylor did not directly comment on the report before his sentence was imposed, the trial judge responded to his inquiries about the extent to which he had relied on the report in fashioning Taylor's sentence. Finally, while the trial judge did reference the report of the incident at the jail, when read in its entirety—and as the court communicated to Taylor in response to his questions—the incident at the jail played a very minor role in the court's rationale for its sentence.

{¶ 25} Because the information here was of a type that the court was permitted to consider under R.C. 2929.19(B)(1)(a), the information was provided to Taylor's attorney before the sentencing hearing, and consistent with Crim.R. 32(A)(1), both Taylor and his attorney were permitted to address any concerns they had about the report, we find Taylor's first assignment of error not well-taken.

14.

## Crim.R. 29

{¶ 26} In his second assignment of error, Taylor argues that the trial court erred when it denied his motion for acquittal under Crim.R. 29, with respect to Counts 13 to 18, violations of R.C. 2907.321(A)(6) (prohibiting persons from bringing or causing to be brought into this state obscene material involving a minor). Specifically, Taylor maintains that the State presented no evidence as to where the obscene material came from or that it was caused to be brought into the state, therefore, the evidence was insufficient to support his convictions of Counts 13 to 18.

{¶ 27} The State responds that there was enough circumstantial evidence that a rational juror could find that Taylor brought the obscene material into the state. It argues that interstate networks were used to request and transmit the child-abuse materials to Taylor's cell phone via his national cellular data carrier. The State urges this court to look to federal cases that have applied federal child-pornography statutes and have found that the interstate-commerce element of those statutes is satisfied when a defendant uses the internet to distribute child pornography, regardless of whether there is evidence that the data travelled interstate.

{¶ 28} A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 2005-Ohio-1507, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

15.

{¶ 29} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 2016-Ohio-8448, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

{¶ 30} Under R.C. 2907.321(A)(6), "[n]o person, with knowledge of the character of the material or performance involved, shall . . . [b]ring or cause to be brought into this state any obscene material that has a minor . . . as one of its participants or portrayed observers." In *State v. Lee*, 2021-Ohio-1158, ¶ 38 (7th Dist.), the Seventh District recognized that under the similarly-worded R.C. 2907.322(A)(6)—which prohibits a person from bringing or causing to be brought into this state any material that shows a minor person participating or engaging in sexual activity, masturbation, or bestiality—the state must prove that the images were brought or caused to be brought into the state of Ohio by the defendant. The court held that where the State fails to offer evidence of the origin of the images, there is insufficient evidence regarding the importing element of R.C. 2907.322(A)(6).

16.

{¶ 31} In *Lee,* the State argued in closing that the images found on an SD card were "probably" downloaded from the internet. In its appellate brief, it contended that the jury could have concluded that the photographs in question were brought into the state of Ohio because the SD card was found in Lee's residence in Carroll County; the SD card was an electronic storage device; the photos were electronically stored; therefore, it could be inferred that the photographs were "electronically obtained from the internet or some other electronic source originating in the online or electronic world." *Id.* at ¶ 39. The State cited Ninth Circuit caselaw that observed that "'[o]nline child pornography (or any other electronic image) is typically received and viewed via email, downloading, or file sharing, or viewed on an Internet website.'" *Id.,* citing *U.S. v. Kelley*, 482 F.3d 1047, 1055-56 (9th Cir. 2007) (Thomas, J. dissenting). The court rejected this argument and found that "the state offered no evidence from which the jury could infer that the images were downloaded from a server outside of the state of Ohio" and concluded that there was insufficient evidence in the record to establish the importing element of Lee's convictions under R.C. 2907.322(A)(6). *Id.* at ¶ 40.

{¶ 32} The *Lee* court distinguished the facts in that case from the facts in *State v. Maxwell*, 2002-Ohio-2121, where the State had offered evidence that Maxwell downloaded illegal images "from America Online, an internet service provider, and that all America Online traffic passes through the company's servers in Virginia." *Lee* at ¶ 35, citing *Maxwell* at ¶ 3.

{¶ 33} Here, the State offered the testimony of Sergeant Ryan Gillmor, who assisted in the cellphone extraction here. With respect to the "[b]ring or cause to be

17.

brought into this state" element of R.C. 2907.321(A)(6), Gillmor testified that the videos were saved, deleted, and extracted from an SD card in Taylor's cellphone. He said that Taylor's cell phone provider was TracFone, which is a national provider of prepaid cellular service that operates through Verizon towers, another national provider. He explained that "cell phone towers are interconnected," so the towers located in Huron County access "a wider and bigger network."

{¶ 34} Gillmor testified that "[t]o the best of [his] knowledge," he "would say" the videos here were downloaded from the internet. He "assume[d]" they had been "downloaded from the internet" because it "didn't appear that they were made." He acknowledged, however, that "the only way to know where they came from" is to somehow match up the "hash values" of the videos or images. Gillmor explained that videos downloaded from a phone pull information from local cell towers that are "connected to a wider, bigger internet and network of data on the phone." He said the internet is wide open to getting videos from all over the world," but he had "no idea" whether these particular videos were from Ohio or not. He agreed that "[b]asically everything that's on the internet is accessible in Ohio," so the videos "could be" from outside of Ohio. Although Gillmor observed that some of the videos depicted people of different ethnicities and national origins, ultimately he "had no idea to tell where they're from looking at a video." In sum, Gillmor conceded that he couldn't give a "definitive answer" and could not "safely" say where the images or videos came from.

{¶ 35} In response to Taylor's motion for acquittal, the trial court found that neither *Lee* nor *Maxwell* applied to the facts of the case. It determined that the matter

18.

was one of first impression in Ohio. It concluded that "based on the nature of the internet . . ., the jury could make an inference if they found it was downloaded from the internet that, in fact, it was across state lines." The trial court denied Taylor's Crim.R. 29 motion for acquittal.

{¶ 36} We agree with Taylor that the trial court erred in denying his motion for acquittal with respect to Counts 13 to 18. We find that the State failed to present sufficient evidence that Taylor brought the obscene material into the state or caused it to be brought into the state. Gillmor testified only that the videos could have come from outside of Ohio—he was simply unable to say that the videos were brought into the state.

{¶ 37} The State urges us to apply federal caselaw interpreting federal child-pornography statutes, holding that the government need not produce evidence that the child pornography travelled across state lines and need only show that the defendant "used a means or facility of interstate commerce (such as the internet) to distribute the child pornography." *United States v. Clark,* 24 F.4th 565, 573 (6th Cir. 2022). The problem with the State's position is that the language used in the federal statutes does not correspond with the language employed in R.C. 2907.321(A)(6). The federal statutes— 18 U.S.C. 2251 et al.—prohibit the possession, receipt, distribution, reproduction, etc., of such illegal images "using any means or facility of interstate or foreign commerce." *See, e.g.,* 18 U.S.C. 2252. It is well-recognized that the internet is an instrumentality and channel of interstate commerce. *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007). The court in *Clark* held that "[b]y its terms, § 2252(a)(2) can reach a purely

19.

intrastate distribution of child pornography so long as that distribution occurred by the use of a means or facility of interstate commerce." *Clark* at 574.

{¶ 38} Here, the provision of the statute under which Taylor was convicted *cannot* reach purely intrastate activity. It requires proof that the obscene material was brought into the state or caused to be brought into the state. The State failed to present evidence supporting this element of the offense. We, therefore, agree that Taylor's convictions under R.C. 2907.321(A)(6)—Counts 13 to 18—are not supported by sufficient evidence and must be reversed and vacated.

{¶ 39} The dissenting opinion would rely on federal case law despite the difference in the language of the federal statutes. It would hold that the element "bring or cause to be brought into this state" is satisfied where the State produces evidence that the obscene material was downloaded from the internet, even if there is no other evidence that the data travelled interstate. In reaching this conclusion, the dissenting opinion examines the language of the pre-2008 amendments to 18 U.S.C. 2252(a)(2), which imposed punishment on any person who "knowingly receive[d], or distribute[d], any visual depiction that has been mailed, or has been shipped or *transported in interstate or foreign commerce . . . by any means including by computer . . . .*" (Emphasis added.) It observes that "in interstate or foreign commerce" has "long been held to require actual crossing of a state or national border." *U.S. v. Lewis*, 554 F.3d 208, 213 (1st Cir. 2009), thus, "the pre-2008 version of 18 U.S.C. § 2252(a)(2) is similar to R.C. 2907.321(A)(6) because they both require the obscene material to move across state lines." It then cites numerous federal cases that examined the pre-2008 version of 18 U.S.C. 2252(a)(2) and

20.

held that the "transported in interstate or foreign commerce" requirement was satisfied when the prosecution shows that the obscene material was transmitted through the internet.

{¶ 40} But one of the cases cited by the dissenting opinion clarifies that "in interstate commerce" does not *actually* require movement across state lines and articulates exactly why we cannot rely on federal case law applying 18 U.S.C. 2252. In *U.S. v. MacEwan*, 445 F.3d 237 (3d. Cir. 2006), the government offered testimony summarizing the flow of data over the Internet and the routing of website connection requests. In *MacEwan*, Comcast was the defendant's Internet service provider. A Comcast manager testified. He explained that "when a Comcast subscriber accesses the Internet from his home computer and requests a connection with a website, the connection would first originate from the subscriber's computer, pass through the cable modem—both of which are located in the subscriber's house—and then be sent to a regional data center," located in Pennsylvania, where the defendant lived. *Id.* at 241. "The regional data center takes the subscriber's request, transfers it through various routers within the regional data center, then sends the request to the Internet backbone, which is a series of leased, commercial and private lines." *Id.* "Those lines take the subscriber's specific request and connect it to the server containing the desired website." *Id.* The witness testified that Comcast refers to this process as "Shortest Path First" ("SPF"). *Id.*

{¶ 41} The Comcast manager described that under SPF, "when the signal travels from the regional data center it will be dynamically routed along the lines with the least

volume of Internet traffic, rather than those covering the shortest geographical distance." *Id.* If there is a high volume of traffic for requests that that would normally be routed within Pennsylvania, the request would be assigned another line connection, which would still typically be within Pennsylvania. However, if those lines were too busy, the connection request could instead be routed outside of Pennsylvania, even if the requested website were located on a server located within Pennsylvania. The witness stated that the connection request would end up "wherever the server is physically located where [the subscriber] was trying to go." *Id.* That could be located in Pennsylvania or anywhere else in the United States. *Id.* at 241-242.

{¶ 42} The defendant argued that the government failed to prove that there had been an interstate transmission of the pornographic images. He argued that absent proof to the contrary, "the images could just as easily have traveled intrastate and that such an activity was beyond the reach of Congress under the Commerce Clause." *Id.* at 241.

{¶ 43} The Third Circuit rejected this argument. It emphasized that "[n]owhere in [§ 2252] does it state that the child pornography images must have crossed state lines; rather, it states solely that they must have been 'transported in interstate . . . commerce by any means, including by computer.'" *Id.,* citing *Okeke v. Gonzales,* 407 F.3d 585, 593 (3d Cir.2005). It recognized that "the Internet is an instrumentality and channel of interstate commerce." *Id.* at 245. The court explained that although "a website connection request can travel entirely intrastate or partially interstate," it does not matter because *"once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce." Id.* at 244.

22.

{¶ 44} Contrary to the federal statutes that prohibit transporting such images in interstate commerce, it *does* matter under R.C. 2907.321(A)(6) whether the child pornography traveled across state lines because the statute prohibits bringing the prohibited images into the state or causing them to be brought into the state. It is not sufficient that the defendant merely used technology that is *capable* of transporting images between states. The information must have *in fact* been transported across states. The State was required to produce evidence of this element, and the testimony it offered was not sufficient.

{¶ 45} Accordingly, we find Taylor's second assignment of error well-taken. Given that the sentences imposed for Counts 13 to 18 were ordered to be served concurrently with the sentences imposed on the remaining counts, Taylor's aggregate sentence is unaffected by our decision.

### III. Conclusion

{¶ 46} The trial court properly considered the incident report from the jail, shared it with counsel, and allowed Taylor and his attorney to address the substance of the report during allocution. His sentence was not contrary to law as violating R.C. 2929.19(B)(1)(a) or Crim.R. 32(A)(1). We find his first assignment of error not well-taken.

{¶ 47} The State failed to present sufficient evidence that Taylor brought or caused to be brought into the state obscene material involving children. Taylor's convictions under R.C. 2907.321(A)(6)—Counts 13 to 18—must be reversed and vacated. We find his second assignment of error well-taken. Taylor's aggregate sentence

23.

remains unaffected by this decision, however, because the sentences imposed for these convictions were ordered to be served concurrently with the sentences imposed for all other counts.

{¶ 48} We affirm, in part, and reverse, in part, the July 10, 2023 judgment of the Huron County Court of Common Pleas.  The State is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed,<br>in part, reversed, in part,<br>and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.        _____
                  JUDGE


Myron C. Duhart, J.
CONCURS, AND WRITES       _____
SEPARATELY              JUDGE


Charles E. Sulek, P.J.
CONCURS, IN PART, DISSENTS,
IN PART, AND WRITES
SEPARATELY.


**DUHART, J., Concurring**

{¶ 49} I concur with the majority decisions pertaining to both Taylor's conviction and sentence. With respect to Taylor's sentence, I concur with the majority's conclusion that the trial court was authorized under R.C. 2929.19(B)(1) to consider at sentencing the

24.

jailhouse incident report involving Taylor's behavior while in custody. But I concur not *just* because the information at issue in this case was (1) an institutional record that (2) was timely provided to Taylor's attorney some five minutes before the sentencing hearing.

{¶ 50} Instead, I believe that a trial judge should *always* be permitted to consider information that is demonstrably reliable and relevant to the imposition of sentence – whether, as in this case, the source of that information is a jailhouse report from the facility in which the defendant is being housed or, as in *State v. Sears,* 2023-Ohio-1925 (6th Dist.), the source of that information is a conversation with a probation department employee familiar with the defendant's probation. *See* R.C. 2929.19(A) (Providing that "with the approval of the court, *any* … person may present information relevant to the imposition of sentence" in a case. (Emphasis added.)).

{¶ 51} I also believe that regardless of when -- and from whom -- such reliable and relevant information is received, the trial court itself should be allowed to present the information at sentencing, in conformity with R.C. 2929.19(A). *See Sears* at ¶ 36-37 (dissenting opinion) (stating that R.C. 2929.19(A) should be read to permit a trial court to consider, and then put on the record, relevant information that had already been relayed to the trial court by another department). Thereafter, of course, a defendant must be afforded an opportunity to respond to that information, in accordance with the law. *See* Crim.R. 32(A)(1).

25.

{¶ 52} Because the majority articulates a far narrower basis for permitting consideration of the incident report than the basis I propose, I concur in judgment only with the majority's decision as to the propriety of Taylor's sentence.

{¶ 53} With respect to Taylor's conviction, I agree with the analysis set forth in the dissent, which concludes, based on a review of similar federal caselaw, that "the 'transported in interstate or foreign commerce' requirement is satisfied when the prosecution shows that the obscene material was transmitted through the internet," and that "it is reasonable to infer that pornography videos downloaded from the internet have crossed state lines and have been 'brought into this state.'" In this case, however, I do not agree with the dissent that the evidence was sufficient to establish that the obscene material in Taylor's "porn" folder was downloaded from the internet. As indicated in the majority decision, Sergeant Gillmore "assume[d]" the images had been "downloaded from the internet," but he could not give a "definitive answer" and he could not "safely" opine as to the origin of the images or videos that were stored on the SD storage device. Accordingly, I am compelled to agree with the majority decision that Taylor's convictions under R.C. 2907.321(A)(6) – Counts 13 to 18 – are not supported by sufficient evidence and, therefore, must be reversed and vacated.

**SULEK, P.J., Concurring, in part, and dissenting, in part,**

{¶ 54} I concur with Part A of the majority decision holding that the trial court did not err when it sentenced Taylor. But, because I believe that the state produced sufficient evidence that Taylor committed the act of bringing child pornography into the state, I respectfully dissent from Part B and would affirm his conviction on Counts 13 to 18.

26.

**{¶ 55}** R.C. 2907.321(A)(6) provides that "[n]o person, with knowledge of the character of the material or performance involved, shall . . . [b]ring or cause to be brought into this state any obscene material that has a minor or impaired person as one of its participants or portrayed observers." The issue presented is whether the element "bring or cause to be brought into this state" is satisfied where the state produces evidence that the obscene material was downloaded from the internet.

**{¶ 56}** The state cites a number of federal cases in support of the proposition that the element "using any means or facility of interstate or foreign commerce" in 18 U.S.C. 2252(a)(2) (prohibiting the knowing receipt or distribution of child pornography) is satisfied where the defendant uses the internet to download or distribute child pornography even if there is no other evidence that the data travelled interstate. Its primary example is *United States v. Clark*, 24 F.4th 565 (6th Cir. 2022), in which the Sixth Circuit upheld a conviction where the evidence showed that the pornography moved from the defendant's computer through the internet to the government agent's computer.

**{¶ 57}** While the majority correctly recognizes that the language of 18 U.S.C. 2252(a)(2) does not correspond to the language of R.C. 2907.321(A)(6), and thus the holding in *Clark* is not applicable, the reasoning in *Clark* calls to attention the legislative history of 18 U.S.C. 2252(a)(2), which provides an instructive comparison.

**{¶ 58}** Prior to a 2008 amendment, 18 U.S.C. 2252(a)(2) imposed a punishment on any person who "knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or *transported in interstate or foreign commerce . . . by any*

27.

*means including by computer . . . ."* (Emphasis added.) The phrase "in interstate or foreign commerce" has "long been held to require actual crossing of a state or national border." *U.S. v. Lewis*, 554 F.3d 208, 213 (1st Cir. 2009). In that way, the pre-2008 version of 18 U.S.C. 2252(a)(2) is similar to R.C. 2907.321(A)(6) because they both require the obscene material to move across state lines.

{¶ 59} Federal cases that have examined the pre-2008 version of 18 U.S.C. 2252(a)(2) have held that the "transported in interstate or foreign commerce" requirement is satisfied when the prosecution shows that the obscene material was transmitted through the internet because "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines." *Lewis* at 215, quoting *U.S. v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997); *see also U.S. v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006); *U.S. v. White*, 2 Fed.Appx. 295, 298 (4th Cir. 2001); *U.S. v. Runyan* 290 F.3d 223, 239 (5th Cir. 2002); *U.S. v. Diehl*, 775 F.3d 714, 721-722 (5th Cir. 2015); *U.S. v. Mellies*, 329 Fed.Appx. 592, 606 (6th Cir. 2009); *U.S. v. Harris*, 548 Fed.Appx. 679, 682 (2d Cir. 2013) ("use of the Internet satisfies [requirement that child pornography had been transported in interstate . . . commerce]."). This concept continues to be cited by federal courts even after the 2008 amendment. *See Lewis v. United States*, U.S. Dist. Ct., N.D. Texas, 2021 WL 2367120 (May 10, 2021) ("It is also well established that the 'transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce for the purposes of 18 U.S.C. § 2251."); *U.S. v. Napier*, 787 F.3d 333 (6th Cir. 2015); *Chapman-Sexton v. United States*, U.S. Dist. Ct., S.D. Ohio, 2021 WL 292027, *10 (Jan. 28.

28, 2021). The only exception to these cases is *U.S. v. Schaefer*, 501 F.3d 1197, 1205 (10th Cir. 2007), *overruled on other grounds by U.S. v. Sturm*, 672 F.3d 891 (10th Cir. 2012), which "decline[d] to assume that Internet use automatically equates with a movement across state lines." *Schaefer*, however, "stands alone and has been rejected by every court that has considered the issue." *Mellies* at 605.

{¶ 60} As recognized by the Second Circuit, "[t]his conclusion makes perfect sense." *Harris* at 682. "[B]ecause of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce." *Id.*, quoting *MacEwan* at 244; *see also Clark* at 574 (claim that downloaded child pornography did not pass through interstate wires is "dubious" "considering the structure, complexity, and interconnectedness of the internet").

{¶ 61} Thus, I would hold that it is reasonable to infer that pornography videos downloaded from the internet have crossed state lines and have been "brought into this state" as set forth in R.C. 2907.321(A)(6).

{¶ 62} "In a sufficiency analysis, we must view all evidence and reasonable inferences in the light most favorable to the prosecution, and determine whether the trier of fact could have found all the elements of the offense proven beyond a reasonable doubt." *State v. Davis*, 2023-Ohio-970, ¶ 12 (6th Dist.); *State v. Filiaggi*, 86 Ohio St.3d 230, 247 (1999), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991) ("In examining claims based upon insufficient evidence, a reviewing court will ask whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable

29.

to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.").

{¶ 63} Here, the state produced evidence that Taylor possessed at least 500 videos of obscene material involving children, which he stored on his phone in a folder called "porn." Detective Sergeant Gillmor testified that to the best of his knowledge the videos were downloaded from the internet, and Taylor's phone used TracFone which is a national provider on the Verizon network. According to Gillmor, these types of videos exist "from all over the world, and the internet is wide open to getting videos from all over the world," and at least one of the videos on Taylor's phone depicted a girl with a different nationality and had foreign language written across the top. From this evidence, a rational juror could infer that the obscene material in Taylor's "porn" folder was brought into this state, and therefore could have found beyond a reasonable doubt that all the elements of R.C. 2907.321(A)(6) had been proven.

{¶ 64} Accordingly, I would find Taylor's second assignment of error not well-taken and would affirm the judgment of the Huron County Court of Common Pleas in its entirety.

---

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

30.